COMMONWEALTH vs. DENNIS A. ALLEN.

No. 89-P-586.

Suffolk. January 11, 1990. - May 23, 1990.

Present: BROWN, DREBEN, & KASS, JJ.

*Search and Seizure*, Exigent circumstances, Standing to object, Forcible
   entry by police, Warrant. *Constitutional Law*, Arrest, Search and
   seizure. *Practice, Criminal*, Required finding, Appeal, Instructions to
   jury. *Controlled Substances*. *Assault by Means of a Dangerous
   Weapon. Self-Defense*.

Police acted lawfully under the Fourth Amendment to the United States
   Constitution in entering a dwelling without a search warrant to execute
   an arrest warrant directed against a person therein. [591-594]
In the circumstances of an entry of a dwelling by police to execute an
   arrest warrant, the police were justified in not stating their purpose af-
   ter knocking and identifying themselves, where there was good reason
   to fear serious harm to themselves or others if they had stated they had
   come to arrest the (armed) occupants. [594-595]
Sufficient evidence was introduced at the trial of criminal indictments to
   warrant the denial of the defendant's motions for required findings of
   not guilty. [595-596]
The judge at a criminal trial correctly declined to instruct the jury as re-
   quested by the defendant and properly instructed on the issue of self-
   defense. [596-597]

INDICTMENT found and returned in the Superior Court De-
partment on October 8, 1987.

A motion to suppress evidence was heard by *John J. Irwin,
Jr.*, J., and the case was tried before *George C. Keady, Jr.*, J.

*Mary Ann Driscoll* for the defendant.

*Nijole Makaitis*, Assistant District Attorney, for the
Commonwealth.

KASS, J. An arrest warrant was out for the defendant Den-
nis A. Allen when police searched him and the apartment —
not his — in which they found him. We conclude that a mo-
tion to suppress incriminating evidence found during those

searches was rightly denied. There are several lesser points on appeal.

A high speed car chase in the afternoon of August 26, 1987, had triggered the chain of events which led to the defendant's arrest. The principal prey in the chase had been Everton (Doc) Douglas, wanted for drug dealing and in connection with a recent shooting. The police did not catch Doc but did apprehend a passenger in the vehicle being pursued — he had leapt out — who gave information which led to a stakeout of apartment no. 2 at 247 Woodrow Avenue, Dorchester.

Surveillance began at about 6 P.M. from a van. Three police officers in an unmarked chase car kept an eye on a rear exit of the apartment house. From his post in the van, fifteen to twenty feet to the front of the building under watch, Detective Kee observed a man intermittently peering out of one of the basement apartment windows. Kee believed that man to be the defendant, whom he knew as Anthony Sudlow (an alias). To Kee's knowledge there were warrants for Sudlow's arrest on charges of assault with a dangerous weapon and assault with intent to murder. Kee also understood Sudlow and Doc to be friends and members of the same gang or posse.[1]

A man made several short visits to the apartment. Each time the lights went on when he arrived and went off after the visitor left. After a third visit, this man emerged with another man, thought by Kee to be Sudlow, and a woman. As the trio entered an automobile, the lights in the apartment, which had been on, switched off, allowing Kee to deduce that someone, probably Doc, was still inside. Kee radioed the chase car to intercept and search the car that was just leaving with the two men and one woman. That assignment was carried out by the chase car with an excess of efficiency, i.e., about ten feet from 247 Woodrow Avenue and within an unobstructed line of sight from the apartment

---

[1]There were also outstanding warrants for the arrest of Doc.

under surveillance. The man who Kee thought was Sudlow turned out to be someone else.

Kee and the surveillance team were now apprehensive that an alerted Sudlow and Doc would slip away. Ten officers, equipped with a battering ram, moved in. They knocked at the door of the apartment they had been watching and announced — so it was found — "Boston Police. Would you please open up." Then they used the battering ram and the door flew open. What they saw was the defendant pointing a handgun at them. There was a scramble for cover, then a rush at the defendant, whom the police subdued and searched. The weapon was a Colt .45 caliber automatic pistol, fully loaded. In the defendant's pockets, the police found six to eight rounds of hollow nose .357 caliber ammunition. That action took place in a living room. The police then made a sweep search of the apartment to see if anybody else was in it. No one was, but the police found eleven pounds of marihuana in an open bag on a bed in an adjoining bedroom. In response to questioning at the police station, the defendant told the police he did not live in the apartment at 247 Woodrow Avenue. There was no evidence that the defendant had any relation to the landlord of the apartment, Aquality Associates, or to the tenant under written lease, Arthur Atkinson.

Now revealed by his true name, Dennis A. Allen, the defendant was tried before a jury and convicted of assault by means of a dangerous weapon and unlawful possession of a firearm. On the charge of possession of marihuana with intent to distribute, the jury failed to reach a verdict, producing a mistrial as to that indictment. The defendant was acquitted on a charge of distributing marihuana.

1. *The suppression motion.* Evidence of the circumstances of the arrest and search was generated during the course of a pretrial hearing on a motion to suppress the firearm which the defendant pointed at the police, the ammunition, and the marihuana.[2] That evidence supports the findings of the mo-

---

[2]The motion also asked to suppress a .357 caliber Smith and Wesson revolver, $321 in currency, and an identification in the name of Anthony D. Sudlow. It is not apparent on the record where the Smith and Wesson

tion judge, from which we have drawn our recitation of facts. The defendant protests that the police had no search warrant with which to enter the apartment and that there were not exigent circumstances which might justify the search of a residence without a search warrant.

- The arrest warrants sufficed. Law enforcement officers, acting under an arrest warrant,[3] do not do violence to the safeguards of the Fourth Amendment to the United States Constitution if they enter the dwelling in which the suspect named in the arrest warrant lives when they have reason to think the suspect is there. *Payton* v. *New York*, 445 U.S. 573, 603 (1980). The determination by a judicial officer of probable cause acts as a screen between the overzealous official and the citizen. *Id.* at 602. A person's home is not a castle against execution of a lawful arrest warrant directed against that person. The police may not, however, so far as the rights of the person who lives there are concerned, use an arrest warrant for a suspect to enter the dwelling of someone else because they think the suspect is present. *Steagald* v. *United States*, 451 U.S. 204, 213 (1981). For that purpose the authorities would require a search warrant. *Ibid.* See also *Commonwealth* v. *Pietrass*, 392 Mass. 892, 898 n.9 (1984). That rule deters the use of an arrest warrant as a pretext to search the dwelling of someone other than the subject of the arrest warrant. To illustrate: the police could enter apartment no. 2 at 247 Woodrow Avenue pursuant to an arrest warrant — and without a search warrant — if it were Allen's dwelling. Assuming that it was Arthur Atkinson who lived in the apartment,[4]  Atkinson could demand that the police have a search warrant to look for Allen and could de-

---

was found nor was further mention made of it at the motion hearing or at trial. The ammunition found on the defendant's person fit the Smith and Wesson.

[3]The authorities need not carry arrest warrants on their persons at the time they make an arrest pursuant to outstanding arrest warrants. See *United States* v. *Watson*, 423 U.S. 411, 449 (1976) (Marshall, J., dissenting); *Commonwealth* v. *Walker*, 370 Mass. 548, 560 (1976).

[4]It will be recalled that the tenant of record in apartment no. 2 was Arthur Atkinson.

mand suppression of evidence incriminating Atkinson which the police, lacking a search warrant to look for Allen, turned up while pursuing Allen. In relation to *Atkinson's* expectation of privacy within his own dwelling and his rights which flowed from that expectation, the police entry into Atkinson's apartment to arrest Allen offended the Fourth Amendment.

That, however, is not the end of the story for the defendant. It is the idea of the sanctity of a person's home that is at the center of the Fourth Amendment and what we are discussing. See *Payton* v. *New York*, 445 U.S. at 585; Mascolo, Arresting a Suspect in the Home of a Third Party: The Issue of Standing or Legitimate Expectations of Privacy, 4 Western New Eng. L. Rev. 381, 392-395 (1982). If the person whose home it is cannot insist that the police be equipped with a search warrant if they have an arrest warrant for him, a relative stranger may not stand in a better position. It would produce an unacceptable paradox to afford the subject of an arrest warrant greater protection in the home of another than in his or her own home. Although the person who lived in apartment no. 2 may have had certain rights, had there been an occasion to claim them, we do not think any right of the defendant under the Fourth Amendment, art. 14 of the Declaration of Rights of the Massachusetts Constitution, or G. L. c. 276, § 1, was violated.

This is not an occasion for invoking the doctrine of "automatic standing," announced in *Commonwealth* v. *Amendola*, 406 Mass. 592, 596-601 (1990).[5] What underlies the conferring of automatic standing in a search and seizure case is that the defendant should not be placed in the self-contradictory position of, with one hand, disclaiming any interest in the premises where incriminating evidence is found and thereby lose standing to challenge the search and seizure,[6] and, with the other hand, claiming a privacy interest in the

---

[5]The *Amendola* case was decided after this case was briefed and argued. Because it is pertinent, we consider the issue of automatic standing although the defendant has not argued it.

[6]That is the Federal approach under *United States* v. *Salvucci*, 448 U.S. 83 (1980).

premises and thereby identifying with incriminating material found in the premises. No similar irreconcilable choice faces the subject of an arrest warrant: police may enter premises in which he claims a privacy interest to arrest him; if, as here, the subject of the arrest warrant disclaims interest in the premises, he is neither better nor worse off. Relieved of awkward choices, there is no salutary purpose in permitting someone who has no interest in a dwelling to assert rights based on the sanctity of a dwelling.

Once inside apartment no. 2 to execute the arrest warrant for the defendant, the police could search him incident to his arrest. *Chimel* v. *California*, 395 U.S. 752 (1969). *Commonwealth* v. *Bowden*, 379 Mass. 472, 477 (1980). *Commonwealth* v. *Stafford*, 18 Mass. App. Ct. 964, 965 (1984). The police also acted within permissible bounds in making, incident to the arrest, a quick and limited search of the premises, a "protective sweep," to secure themselves against harm from other persons who might be in the apartment. *Maryland* v. *Buie*, 110 S. Ct. 1093, 1099-1100 (1990).[7] *Commonwealth* v. *Bowden*, 379 Mass. at 478. *Commonwealth* v. *Stafford*, 18 Mass. App. Ct. at 965.

On our analysis, it is not necessary to consider whether exigent circumstances justified the entry of the police into apartment no. 2 without a search warrant. See *Commonwealth* v. *Forde*, 367 Mass. 798 (1975); *Commonwealth* v. *Donaghue*, 23 Mass. App. Ct. 103 (1986).[8]

2. *The "knock and announce" question.* As matter of common law, except in limited circumstances, police must knock, identify themselves, and state their purpose before entering a

---

[7]In that case, the police entered Buie's apartment to execute an arrest warrant for Buie on a charge of armed robbery. After they arrested, searched, and handcuffed Buie, a detective checked out the basement, from whence Buie had emerged, "in case there was someone else" down there. The detective found a red running suit lying in plain view and seized it. One of two robbers in the holdup Buie had been identified with had worn a red running suit. The question in the case was whether the police, lacking a search warrant, could lawfully search Buie's apartment after he was under arrest.

[8]The police had the apartment under surveillance for over two hours and had known to look for Doc in the apartment for over four hours.

dwelling to execute an arrest warrant. *Commonwealth v. Cundriff*, 382 Mass. 137, 139-147 (1980), cert. denied, 451 U.S. 973 (1981). *Commonwealth v. Sepulveda*, 406 Mass. 180, 181 (1989). *Commonwealth v. Gondola, ante* 286, 287 (1990).[9] In the case before us the police knocked and identified themselves, but did not state their purpose before breaking in the door to apartment no. 2. That failure to announce their purpose was justified under the exception to the general rule that the police may dispense with one or more components of the knock and announce procedure if they reasonably fear serious harm to themselves or others. *Commonwealth v. Cundriff*, 382 Mass. at 146-148.

Both Doc and the defendant were wanted for violent crimes involving dangerous weapons. The police found firearms on the man who had jumped out of the car in which they had spotted Doc earlier in the day. One of the men apprehended leaving apartment no. 2 was armed. There was good reason to anticipate a shoot-out if the police announced that they had come to arrest the defendant and Doc. The failure to state their purpose falls within the principles and facts set out in *Cundriff*.

3. *Motions for required findings of not guilty.* Defense motions were denied — the defendant says erroneously — for required findings of not guilty on the indictments for assault with a dangerous weapon and possession of marihuana with intent to distribute. As to the possession with intent to distribute indictment, the appeal is not ripe because the judge declared a mistrial when a hung jury developed on that charge and the Commonwealth has not yet attempted a retrial. It may be helpful, however, if we state our views. See *Cronin v. Strayer*, 392 Mass. 525, 527 (1984); *Appleton v. Hudson*, 397 Mass. 812, 813 n.3 (1986); *Commonwealth v. Chatfield-Taylor*, 399 Mass. 1, 3 (1987).

---

[9]Although the knock and announce rule is rooted in the common law rather than the constitution, the courts of this Commonwealth apply the exclusionary rule to remedy its violation. See *Commonwealth v. Cundriff*, 382 Mass. at 140-147; *Commonwealth v. Manni*, 398 Mass. 741, 743 (1986); *Commonwealth v. Gondola, supra* at 288-289.

On review, we inquire "whether the evidence offered by the Commonwealth, together with reasonable inferences therefrom, when viewed in its light most favorable to the Commonwealth, was sufficient to persuade a rational jury beyond a reasonable doubt . . . of every element of the crime charged." *Commonwealth* v. *Campbell*, 378 Mass. 680, 686 (1979). *Commonwealth* v. *Mandile*, 403 Mass. 93, 94 (1988). *Commonwealth* v. *Longo*, 23 Mass. App. Ct. 518, 524 (1987).

As to assault by means of a dangerous weapon, it was not a bad start to produce evidence that the defendant pointed a loaded .45 caliber automatic pistol at the police. There was evidence that the defendant knew the men coming through the door were police — one of them in uniform — and that he turned toward them and raised his firearm. There was evidence that whoever was inside had been watching what was going on outside. Contradictions and credibility questions were for the jury to resolve. *Commonwealth* v. *Mercado*, 24 Mass. App. Ct. 391, 398 (1987).

Concerning the drug charge, the jury had the following evidence to consider. The defendant was alone in the apartment when the police came in. The eleven pounds of marihuana were lying on a bed in the room facing Woodrow Avenue. The bedroom in which the police found the marihuana was the room in which they had observed activity and from which they had observed the defendant peering out. It was the room in which the police had observed the light turned off after others had left the apartment. This was sufficient evidence to allow the jury to find that the defendant knew of the location of the drugs and was able to exercise dominion over them. *Commonwealth* v. *Nichols*, 4 Mass. App. Ct. 606, 613 (1976). Eleven pounds was a quantity of marihuana warranting an inference of intent to distribute. See *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 349-350 (1983).

4. *Jury instructions.* Among the jury instructions requested by the defendant was one to the general effect that if the defendant "erroneously, but sincerely believed that he was entitled to use protective force against what he reason-

ably believed was unlawful force or conduct *or an unlawful arrest*, then his mistaken belief is a defense . . ." (emphasis added). That was not a correct statement of the law. See *Commonwealth* v. *Dane Entertainment Serv., Inc.*, 16 Mass. App. Ct. 991, 992 (1983). A person may not resist arrest by those whom he has good reason to know are police officers, irrespective of whether the particular arrest was unlawful or that person thought it was unlawful. *Commonwealth* v. *Moreira*, 388 Mass. 596, 601-602 (1983). *Commonwealth* v. *McMurtry*, 20 Mass. 629, 632 (1985). The requested instruction implicitly contemplates a situation in which the defendant knows he is confronting police. In that regard it is unacceptably wide of its purported mark, viz., an instruction on mistake of fact about the nature of the intruders. See *Commonwealth* v. *White*, 5 Mass. App. Ct. 483, 488 (1977).

As it was, the defendant had the benefit of a satisfactory charge on self-defense, which drew the jury's consideration to the question of justifiable force. Self-defense in this case relies on the same factual underpinning as the defense of mistake of fact — ignorance that the invasion force were police officers. See *Commonwealth* v. *Francis*, 24 Mass. App. Ct. 576, 578 (1987). The instructions were sufficient.

*Judgment affirmed.*