## COMMONWEALTH *vs.* JUSTIN TATUM.

Plymouth. December 3, 2012. - July 22, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Controlled Substances. Search and Seizure,* Warrant, Arrest, Forcible entry by police, Standing to object. *Constitutional Law,* Arrest, Search and seizure. *Practice, Criminal,* Warrant. *Arrest.*

This court concluded that a person who is the subject of a valid arrest warrant and is arrested by police while in the residence of a third party has a right under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights to insist that the police have a reasonable belief at the time they enter the residence that the person would be present; however, where a person has disclaimed any connection to the third party's residence, he does not have a constitutional right to insist that the police obtain a search warrant to search for him in the third party's residence or, where a search warrant is obtained, to challenge the basis on which the warrant issued. [50-54] LENK, J., dissenting, with whom IRELAND, C.J., & DUFFLY, J., joined.

INDICTMENTS found and returned in the Superior Court Department on March 16, 2007.

The cases were tried before *Elizabeth B. Donovan,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Alison R. Bancroft* for the defendant.

*Gail M. McKenna,* Assistant District Attorney, for the Commonwealth.

BOTSFORD, J. Armed with three active arrest warrants for the defendant, a State police officer applied for and obtained a search warrant to search for him in someone else's residence. When the police executed the warrant, they found and arrested the defendant inside the residence, but in doing so, they also observed in plain view what they believed to be cocaine, marijuana, and other items consistent with drug distribution. Based on this evidence, which was seized during a subsequent

search of the residence pursuant to a second search warrant, the defendant was indicted and tried in the Superior Court on charges of trafficking in cocaine in an amount of 200 grams or more, G. L. c. 94C, § 32E (*b*), and possession with intent to distribute marijuana, G. L. c. 94C, § 32C (*a*).[1] A jury found him guilty of both offenses, and the defendant appealed to the Appeals Court, which affirmed his convictions in a decision issued pursuant to its rule 1:28. See *Commonwealth* v. *Tatum*, 81 Mass. App. Ct. 1101 (2011). We granted the defendant's application for further appellate review.

The principal issue the defendant raises concerns the validity of the first search warrant obtained by the State police to search for him at the third party's residence. The defendant argues that the affidavit submitted in support of that search warrant application was based on information obtained by the police trespassing into the curtilage of the residence, in violation of his rights under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. We conclude that a person who is the subject of a valid arrest warrant and is arrested by police while in the residence of a third party has a right under the Fourth Amendment and art. 14 to insist that the police have a reasonable belief at the time they enter the residence that the person would be present. However, at least where, as in this case, the person has disclaimed any connection to the third party's residence, he does not have a constitutional right to insist that the police obtain a search warrant to search for him in the third party's residence or, where a search warrant is obtained, to challenge the basis on which the warrant issued.[2] We affirm the defendant's convictions.

*Background.* On December 18, 2006, State police Trooper

---

[1] The record contains no information concerning the disposition of the charges that were the subject of the arrest warrants that the police originally were seeking to serve on the defendant.

[2] The defendant argues that reversal of his convictions is required on several additional grounds: the police failed to establish probable cause to justify issuance of a "no-knock" warrant; the Commonwealth violated the defendant's right to due process in the manner it obtained recordings of the defendant's telephone conversations while he was held in custody awaiting trial; the evidence at trial was insufficient to prove that the defendant constructively possessed the cocaine and marijuana at issue or that he was guilty of the

Christopher Boyle applied for and obtained a "no-knock" search warrant to search a certain residence located in Kingston (third party's residence) for the defendant, who was the subject of active arrest warrants for, among other things, firearm and drug trafficking offenses.[3] The special tactical operations (STOP) unit of the State police executed the search warrant in the early morning hours of December 19. On the first floor, Michael Goler-Branch (at one point a codefendant) was found sleeping on a recliner. When he stood up, officers observed a gun located in a sock underneath his right leg. Other officers located the defendant in bed in a room on the basement level, in close proximity to two large rolls of cash, an electronic scale, a sizeable bag of what appeared to be marijuana, and a cardboard box containing what appeared to be several clear plastic bags of cocaine. Both Goler-Branch and the defendant were arrested.

Based on the officers' observations made during the initial entry on December 19, 2006, Boyle applied for a second search warrant to search the third party's residence for narcotics, firearms, and evidence of drug distribution. The warrant was obtained, and a second search later the same day yielded, among other items, cash and large quantities of marijuana and cocaine packaged in a manner consistent with distribution. Both the defendant and Goler-Branch thereafter were indicted for trafficking in 200 or more grams of cocaine and possession with intent to distribute a class D substance, marijuana.

Prior to trial, the defendant moved to dismiss the indictments on the ground that the evidence before the grand jury did not establish probable cause to indict him on the charged offenses because the Commonwealth did not, and could not, prove that the defendant lived at the third party's residence. The defendant's first trial counsel withdrew the motion shortly thereafter.

The defendant and Goler-Branch were first tried together in the Superior Court in May, 2008. The trial judge declared a

crimes as a joint venturer; and defense counsel was ineffective in failing to pursue the defendant's motion to dismiss the indictments. We discuss these additional claims very briefly *infra*, and agree with the Appeals Court that they lack merit.

[3] There is no dispute that the unit in Kingston (third party's residence) was not the defendant's residence. The record does not indicate whose residence it was.

mistrial after the jury were unable to reach a verdict. Thereafter the defendant successfully moved to sever, and a second trial commenced on July 27, 2009, before the same judge. On the first day of this second trial, the defendant's new counsel filed three motions to suppress. The first was a motion to suppress the recordings of telephone calls made by the defendant while he was detained awaiting trial;[4] the second sought to suppress all evidence seized from the third party's residence based on the "no-knock" provision in the first search warrant; and the third was a motion to suppress that evidence based on intentional omissions in the affidavit submitted in support of the first search warrant or, alternatively, for a *Franks* hearing.[5] See *Franks* v. *Delaware*, 438 U.S. 154, 155-156 (1978). After a brief argument on the motions, the judge took the second motion (challenging the "no-knock" warrant) under advisement, and denied the first and the third motions.[6] Jury empanelment began almost immediately thereafter. At the conclusion of the second trial, the jury found the defendant guilty of both charges.

*Discussion.* 1. *Third motion to suppress.* The defendant does not challenge separately the validity of the second warrant, but contends that the search conducted pursuant to it was tainted by the illegality of the first search warrant and related search. As mentioned, the defendant argues that the affidavit submitted by Boyle in support of the first search warrant featured an intentional and material omission that, had it been included, would have demonstrated that to establish probable cause the police were relying on information that had been obtained in violation of the defendant's rights under the Fourth Amendment and art. 14. Accordingly, he claims, the search warrant was invalid, and all evidence seized pursuant to both searches must be suppressed. We set out in more detail the background facts of the two search

[4]The defendant was detained pending trial at the Plymouth County house of correction, where he placed several telephone calls that were electronically monitored and recorded. Prior to trial, the Commonwealth had subpoenaed the telephone system administrator at the house of correction to produce several compact discs containing recordings of the defendant's telephone conversations.

[5]The defendant's third motion to suppress is the one raising the principal issue we outlined at the beginning of this opinion.

[6]It is clear from the record that the judge denied the second motion at some point, but there is no explicit ruling that so indicates.

warrants and related searches before considering the defendant's argument.

a. *Background facts.* Boyle's affidavit in support of his application for a warrant to search for the defendant at the third party's residence states, inter alia, that in each of the three months preceding the searches a confidential informant[7] provided information to the police that the defendant was living on a certain street in Kingston in a dwelling that police confirmed matched the description of the third party's residence; periodic surveillance of the third party's residence by the police revealed the defendant's half-brother being present there "on several occasions"; and during another "check" of the third party's residence, Sergeant J. Gilmore of the State police saw a black male fitting the defendant's description, but "could not make a positive identification." The affidavit also states that on December 18, 2006 — the same day the search warrant application was submitted — "[a]t approximately 1510 hours [3:10 P.M.] Sergeant J. Gilmore made an identification" of the defendant "inside of [the third party's residence]." Based on this information, the affidavit states there is probable cause to believe the defendant, the subject of three active arrest warrants described in the affidavit, "is currently located and residing at [the third party's residence]" and may be found there.

Not stated by Boyle in the affidavit but testified to at the second trial are the following facts. On December 18, 2006, Gilmore and Boyle conducted undercover surveillance of the third party's residence in an effort to confirm the defendant's presence there. The third party's residence is on the left side of a duplex with a shared front staircase and walkway facing the street. To maintain his cover, Gilmore wore a Verizon telephone utility helmet and blue jeans, and carried a clipboard. That evening, he walked down the driveway on the left side of the building and approached the rear entrance, entering onto a back porch that provided access to the first floor of the third party's residence.[8] From his vantage point on the back porch, Gilmore

---

[7] The affidavit does not include any information concerning the reliability of the unnamed informant.

[8] The third party's residence included three levels: basement, first floor, and second floor.

observed the defendant[9] one to two feet away in a first-floor bathroom; Gilmore made the observation through a bathroom window that opened onto the porch. Gilmore engaged the defendant in a brief conversation and handed the defendant a window screen that apparently had fallen off the window. Gilmore then departed and informed Boyle of his observations. Boyle, in turn, promptly applied for a search warrant to search the third party's residence for the defendant's person, supported by the affidavit previously described. An assistant clerk-magistrate of the Plymouth Division of the District Court Department issued the warrant that day.

The next day, December 19, at approximately 5:30 A.M., the STOP unit forcibly entered the third party's residence through the front and rear doors to execute the search warrant. As mentioned, officers found and arrested Goler-Branch on the first floor, and found and arrested the defendant in a basement room. The police then sought and obtained the second search warrant for the third party's residence based on the drugs and related items they had just observed in plain view. During the execution of the second warrant, the police seized from the basement room where the defendant had been found a coat containing $285 in currency and a small bag of cocaine, two large rolls of cash totaling $2,026, an electronic scale, a large bag of marijuana, a "cuff sheet" consisting of a short-hand list of names and telephone numbers, two cellular telephones, and a cardboard box that held fifteen bags totaling 53.15 grams of cocaine. They also seized from the first floor a suitcase containing three approximately one-pound bags of marijuana[10] and four bags of cocaine totaling 437.3 grams, and 12.16 grams of an unidentified, white powdery substance that tested negative for narcotics.

b. *Discussion.* Two decisions of the United States Supreme Court, *Payton* v. *New York*, 445 U.S. 573 (1980) (*Payton*), and *Steagald* v. *United States*, 451 U.S. 204 (1981) (*Steagald*), frame our consideration of the defendant's claim. In *Payton*, the Court concluded that under the Fourth Amendment, police with

---

[9]Gilmore was able to confirm the identification based on two photographs of the defendant that he had obtained.

[10]The weight of all four bags of marijuana, including the one found in the basement and the three found on the first floor, was 3.85 pounds.

a valid arrest warrant for a suspect are permitted to enter the suspect's home to arrest him absent a search warrant, so long as the police have a reasonable belief that he will be there. *Payton, supra* at 603 ("for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within"). See *Commonwealth v. Silva*, 440 Mass. 772, 776, 778 (2004) (same under art. 14). In *Steagald, supra* at 205-206, the Court considered the question whether police officers who have a reasonable belief that the subject of a valid arrest warrant is present in a third party's home may enter that home without a search warrant to search for that person.[11] The Court's answer was no: a search warrant based on probable cause that the subject of the arrest warrant will be present in the third party's home is necessary before the police are entitled to enter the home, at least absent exigent circumstances. See *Steagald, supra* at 211-212, 213-214. But the critical point about *Steagald* in relation to this case is that the defendant there was not the subject of an arrest warrant but the resident of the home. See note 11, *supra. Steagald* does not answer whether the subject of the arrest warrant himself is entitled to insist on a search warrant when he is reasonably believed to be present in a third party's home. See *id.* at 219 ("The issue here . . . is not whether the subject of an arrest warrant can object to the absence of a search warrant when he is apprehended in another person's home, but rather whether the residents of that home can complain of the search").

No subsequent decision of the Supreme Court addresses the question whether the subject of an arrest warrant whom the police arrest in a third party's home may challenge evidence seized from that home on the ground that the police did not obtain a valid search warrant before entering. Federal and State courts that have considered the question have reached somewhat

---

[11]In *Steagald v. United States*, 451 U.S. 204 (1981) (*Steagald*), the police forcibly entered the defendant's home without a search warrant to search for a person who did not live there but was the subject of an arrest warrant and whom the police had reason to believe would be present. While searching the home for that person, the police observed drugs, which led them to secure a search warrant for the home, and they subsequently arrested the defendant on charges related to the drugs found in his home. *Id.* at 206-207.

different answers,[12] although the majority view appears to be that the arrestee does not have a right to insist that a search warrant be obtained before entry can be made. See *United States* v. *Jackson,* 576 F.3d 465, 467-468 (7th Cir.), cert. denied, 558 U.S. 1062 (2009), and cases cited. See also W.R. LaFave, Search and Seizure § 6.1(a) (5th ed. 2012), quoting *United States* v. *Jackson, supra* at 468 ("under the commonly held view that the *Steagald* search warrant requirement is for the protection of the third party only, upon objection of the arrestee it will suffice that, absent exigent circumstances, the police had only an *arrest* warrant, although in such a case the police once again must show they had a 'basis for believing that the suspect is actually present in the home' " [emphasis in original]).

We follow the majority view, and reject the defendant's contrary position. To repeat, *Payton,* 445 U.S. at 603, and *Commonwealth* v. *Silva,* 440 Mass. at 778, make plain that the subject of a valid arrest warrant whom the police arrest in his own home has no right to insist on a search warrant as a condition of the police entry; the arrest warrant is sufficient to satisfy the arrestee's Fourth Amendment and art. 14 rights, so long as the police have a reasonable belief that he will be present in his home. It follows that when an arrestee is present in a third party's home rather than his own, the arrestee has the same

---

[12]Compare, e.g., *United States* v. *Jackson,* 576 F.3d 465, 467-468 (7th Cir.), cert. denied, 558 U.S. 1062 (2009) (rejecting defendant's claim that police needed search as well as arrest warrant to enter third party's apartment to effect arrest), *United States* v. *Agnew,* 407 F.3d 193, 196-197 (3d Cir. 2005) (even if arrestee in third party's house had reasonable expectation of privacy because he was overnight guest, he was not protected by search warrant requirement, and not entitled to suppress evidence obtained during warrantless entry by police to effect his arrest), *United States* v. *Kaylor,* 877 F.2d 658, 663 (8th Cir.), cert. denied, 493 U.S. 871 (1989) (possession of arrest warrant and reasonable belief of defendant's presence in third party's home justified warrantless entry into home to effect arrest), and *Commonwealth* v. *Allen,* 28 Mass. App. Ct. 589, 593 (1990) (defendant arrested in third party's home not entitled to insist on search warrant), with *United States* v. *Weems,* 322 F.3d 18, 23 n.3 (1st Cir.), cert. denied, 540 U.S. 892 (2003) (assuming, without deciding, that subject of arrest warrant [arrestee] may object to police entry into third party's home without search warrant and challenge evidence obtained as result), and *State* v. *Cleveland,* 371 N.J. Super. 286, 295-296, 300-303 (2004) (under New Jersey Constitution, arrestee has standing to object to police entry into another person's motel room to search for him without search warrant, but on facts of case, warrantless entry and search were valid).

right under the Fourth Amendment and art. 14 to require that the police have a reasonable basis to believe he will be present when they enter the home in search of him, but no more. As the Appeals Court has noted, "It would produce an unacceptable paradox to afford the subject of an arrest warrant greater protection in the home of another than in his or her own home." *Commonwealth* v. *Allen*, 28 Mass. App. Ct. 589, 593 (1990). The proper focus of constitutional inquiry in this case, therefore, is not whether the police obtained a valid search warrant to search the third party's residence for the defendant, but whether the police had a reasonable belief[13] that the defendant would be present there on December 19, 2006.

The police clearly met the requisite standard. As reflected in Trooper Boyle's affidavit filed in support of the first search warrant application, the police had received a tip from a confidential informant that during October, November, and December of 2006, the defendant was living at a residence that the police independently confirmed met the description of the third party's residence; the police had seen the defendant's half-brother at this location on several occasions when conducting surveillance during these same months; and on the afternoon of December 18, Sergeant Gilmore observed the defendant inside the third party's residence and had a conversation with him there. Considered as a whole, the information possessed by the police provided probable cause to believe that the defendant would be found at the third party's residence on December 18, the day the search warrant was applied for and obtained, and also at 5:30 A.M. on December 19, when the police entered the premises to search for the defendant.

The defendant argues that Gilmore unlawfully entered the curtilage of the third party's residence on December 18, and

---

[13]Some courts have concluded that "reasonable belief" is essentially synonymous with "probable cause." See, e.g., *United States* v. *Hardin*, 539 F.3d 404, 416 n.6 (6th Cir. 2008); *United States* v. *Gorman*, 314 F.3d 1105, 1110-1111 (9th Cir. 2002); *United States* v. *Magluta*, 44 F.3d 1530, 1535 (11th Cir.), cert. denied, 516 U.S. 869 (1995). We have held previously that the two standards are different, with reasonable belief being something less than probable cause. *Commonwealth* v. *Silva*, 440 Mass. 772, 777-780 (2004). We need not decide whether to reconsider our earlier conclusion here, because, as explained *infra*, the police satisfied the probable cause standard.

insofar as that unlawful entry — a trespass — was necessary to establish probable cause for the search warrant, the warrant itself violates the Fourth Amendment and art. 14, requiring suppression of all items seized pursuant to the ensuing searches. A person who resided at the third party's residence and who was not the subject of the arrest warrants held by the police might well succeed in raising such a challenge to the searches on the facts presented here. See *Steagald*, 451 U.S. at 213-214, 216.[14] See also *United States* v. *Jones*, 132 S. Ct. 945, 949 (2012) (intrusion on private property to obtain information is "search" within meaning of Fourth Amendment; search warrant is generally required); *United States* v. *Knotts*, 460 U.S. 276, 285-286 (1983) (Brennan, J., concurring) (same); *Commonwealth* v. *Hall*, 366 Mass. 790, 794-795 (1975) (police eavesdropping from location in hallway of building owned and exclusively controlled by defendant violated defendant's reasonable expectation of privacy under Fourth Amendment; search warrant based on information so obtained by police was invalid).[15] But the defendant here, who *was* the subject of the arrest warrants; who, according to the record, did not reside at the third party's residence;[16] and who consistently has sought to challenge any suggestion that he did, see note 18, *infra*, is not in a position to advance such a claim.[17]

2. *The defendant's other claims.* As indicated at the outset,

---

[14]In applying for a search warrant to search for the defendant at the third party's residence, the police — presumably aware that it was not the defendant's residence — appropriately applied for a search warrant to search the premises for the defendant in accordance with the Supreme Court's directive in *Steagald*, 451 U.S. at 216. It follows from *Steagald's* requirement of a search warrant for a third party's home that a resident of that home would be able to challenge the warrant's validity.

[15]A person with a less extensive connection to the residence, e.g., an overnight guest, also would likely be in a position to challenge the validity of the search warrant. See, e.g., *Commonwealth* v. *Dejarnette*, 75 Mass. App. Ct. 88, 92-93 (2009) (overnight guest in apartment who was subject of arrest warrant can challenge forced entry into apartment by police without search warrant, but in circumstances of case, exigent circumstances justified absence of search warrant).

[16]During booking, the defendant provided police with an address other than that of the third party's residence. See note 3, *supra*.

[17]In support of his third motion to suppress and again on appeal, the defendant argues in the alternative that "at a minimum" he was entitled to an evidentiary *Franks* hearing to test the validity of the first search warrant, on the

the defendant has raised additional claims in challenging his convictions. See note 2, *supra.* Essentially for the reasons stated by the Appeals Court, we conclude that these claims lack merit. We have concluded that the defendant is not in a position to challenge the validity of the first search warrant, but even assuming he were, there clearly was a sufficient basis presented in Boyle's affidavit supporting the warrant application to justify issuance of a "no-knock" warrant and also sufficient evidence to support the defendant's conviction of trafficking in cocaine under both a theory of the defendant's constructive possession of all the cocaine found and a theory of joint venture between the defendant and Goler-Branch.[18]

*Judgments affirmed.*

ground that Boyle's affidavit featured a material omission — namely, the fact of Gilmore's trespass into the curtilage of the property — that was intentional or made with a reckless disregard for the truth. See *Franks* v. *Delaware*, 438 U.S. 154, 155-156 (1978); *Commonwealth* v. *Long*, 454 Mass. 542, 552 (2009). See also *Commonwealth* v. *Ramos*, 72 Mass. App. Ct. 773, 777-778 (2008). The defendant's claim of entitlement to a *Franks* hearing presumes he is in the position to challenge the validity of the search warrant. As we have just discussed, he is not. The denial of the request for a *Franks* hearing was proper.

[18]The defendant also argues on appeal that his trial counsel was ineffective in failing to challenge the sufficiency of the evidence presented to the grand jury. The Appeals Court did not discuss this claim specifically in its decision. See *Commonwealth* v. *Tatum*, 81 Mass. App. Ct. 1101 (2011). The claim fails. Insofar as the defendant challenges the decision of his first trial counsel not to pursue the motion that counsel had filed to dismiss the trafficking indictment, there could be no ineffectiveness because the motion was meritless. The motion argued that the evidence before the grand jury did not provide probable cause that the defendant committed the offense charged because the Commonwealth failed to present evidence that the defendant resided at the third party's residence at the time the police seized the drugs. However, being a resident of the address is not a condition precedent to being charged with possession of drugs found therein. Pursuit of the motion would have been futile. Cf. *Commonwealth* v. *Boria*, 460 Mass. 249, 253 (2011). Insofar as the defendant appears to claim that his second trial counsel was ineffective for failing to challenge the sufficiency of the grand jury evidence connecting him with the drugs found at the third party's residence, the defendant's claim, in substance, is the same as his argument that the trial evidence was insufficient, because the evidence presented to the grand jury on the point was essentially the same evidence that the Commonwealth presented at trial. We have concluded that the trial evidence was sufficient, and certainly the grand jury evidence was as well. Again, pursuit of a motion to dismiss on these grounds would have been futile.

LENK, J. (dissenting, with whom Ireland, C.J., and Duffly, J. join). This case is before us on a somewhat curious and incomplete set of facts. The police, who had several active arrest warrants for the defendant, thought he was likely to be found in a third party's home. The record is silent both as to the identity of that third-party householder and as to how the defendant came to be in the house.[1] In any event, in order to ascertain whether the defendant was in fact present in the unknown third party's home before executing the arrest warrants, a police officer disguised as a Verizon worker entered upon the curtilage of the house without a search warrant and, as a result, confirmed the defendant's presence inside the home. Using the information gained from this search, the police obtained a "no-knock" search warrant for the third party's home, which they executed at about 5:30 A.M. the following morning. A number of State and local police officers, including two special tactical operation (STOP) unit entry teams, with the use of battering rams, broke down the front and back doors and entered the third party's home with a show of force. They arrested the defendant and another man, apparently also not the homeowner. Police observed what were thought to be drugs in plain view and returned later with another search warrant to seize the contraband, all of which the defendant seeks to suppress.

Given that the sanctity of the home is of central concern in jurisprudence concerning the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, any warrantless police entry into a home is presumptively illegal. "[P]rivate residences are places in which the individual normally expects privacy free of governmental intrusion not authorized by a warrant . . . . Our cases have not deviated from this basic Fourth Amendment principle." *United States* v. *Karo,* 468 U.S. 705, 714 (1984). See *Commonwealth*

---

[1]The record reflects that the house was not the defendant's residence. On at least one occasion, however, the defendant slept overnight in a basement room at the house, and had previously made use of the first floor bathroom, facts consistent with his being a social guest. Further, the Commonwealth does not contend that the defendant was unlawfully in the house or had no right to be there. See *Commonwealth* v. *Mubdi,* 456 Mass. 385, 393 n.8 (2010) (exception to automatic standing where defendant had no right to be in house where evidence was found).

v. *Lopez*, 458 Mass. 383, 389-390 (2010). Having been charged with illegally possessing drugs that were seized during the search of the third party's home, the defendant has automatic standing to bring a motion to suppress the seized contraband. See *Commonwealth* v. *Mubdi*, 456 Mass. 385, 392-393 (2010).[2]

While not quarreling with the proposition that the warrantless "Verizon worker" search for information may well have been unconstitutional,[3] the court today holds that the defendant may not challenge it or the ensuing search warrant permitting police to enter the third party's home for the purpose of arresting him. It is the court's position that, irrespective of the defendant's connection to the house, only the householder — and only if he, too, is arrested and charged with a crime[4] — may insist upon a valid search warrant in such circumstances. The only challenge that one in the defendant's position may now bring is as to whether police had a reasonable belief that the defendant was

[2]Under art. 14 of the Massachusetts Declaration of Rights, automatic standing permits a defendant charged with illegally possessing drugs or firearms seized during a search to "succeed in suppressing such evidence where the search was unconstitutional, regardless of whether he has a subjective or objectively reasonable expectation of privacy in the place where the drugs or firearms were found." *Commonwealth* v. *Mubdi*, *supra* at 393. Nonetheless, the defendant "still must show that there was a search in the constitutional sense, that is, that *someone* had a reasonable expectation of privacy in the place searched" (emphasis in original). *Id.* Here, the unknown third-party householder certainly had such an expectation of privacy, as did the defendant for that matter, insofar as he was an overnight guest. See *Minnesota* v. *Olson*, 495 U.S. 91, 99-100 (1990).

[3]See *United States* v. *Jones*, 132 S. Ct. 945, 949 (2012) (physical intrusion by government onto occupied private property for purpose of obtaining information is search within meaning of Fourth Amendment).

[4]The apparently unarrested third-party householder here, whose doors were battered down after police trespassed on his property to gather information, has as his only recourse the somewhat toothless civil action for damages. See Meltzer, Deterring Constitutional Violations by Law Enforcement Officials: Plaintiffs and Defendants as Private Attorneys General, 88 Colum. L. Rev. 247, 284 (1988) ("[T]he conditions of constitutional tort litigation for harm caused by law enforcement officials are ones in which the deterrent effect is likely to be on the low side. The potential plaintiffs . . . . are unlikely to bring suit for harm suffered, whether because of ignorance of their rights, poverty, fear of police reprisals, or the burdens of incarceration. Moreover, in many cases the harm suffered by individuals from the constitutional violation itself may be small, widely dispersed, and intangible, providing little incentive for potential plaintiffs to sue . . .").

present in the third party's home before entering it to execute the arrest warrant. In rebuffing such a challenge, however, the court also holds that the police are free to use information they may have gleaned from a prior unconstitutional search of the third party's home in order to show their reasonable belief that the defendant was present in the third party's house when they entered.

The upshot of today's decision is that, unless the third-party householder is himself arrested when the police execute an arrest warrant for someone else in his house, there will be no consequence if police have not secured the requisite valid search warrant before entering that house. Improperly obtained evidence will not be excluded, and improper police conduct will not be deterred.[5] Where police are not interested in pursuing a case against the third-party householder, and the arrestee whom they reasonably believe to be present cannot challenge the absence or validity of a search warrant, police will have little if any incentive to obtain a search warrant before entering the third party's house. And, in forming that reasonable belief as to the suspect's presence in the third party's house, police may now — also without consequence in such circumstances — physically intrude upon the third party's property to obtain confirmatory information. Chiefly because the court's decision undermines the security of third-party householders, I respectfully dissent.

The facts here, as the court notes, fall outside the decisions of the United States Supreme Court in both *Payton* v. *New York*, 445 U.S. 573, 574-575 (1980) (*Payton*), and *Steagald* v. *United States*, 451 U.S. 204, 205-206 (1981) (*Steagald*), and neither

---

[5]As noted earlier, we know little about how the defendant came to be at the third party's house, which is perhaps neither atypical nor surprising when the third party is not also arrested. Because today's decision will have widespread consequences for householders in that situation, it is helpful to consider an example that may better illustrate the problem. Consider grandparents whose twenty year old grandson has dropped by for a visit and spends the night. Unbeknownst to them, the police have a warrant for his arrest. The police have no interest in arresting the grandparents or in gathering evidence against them. To confirm that the grandson is present, as a tipster has suggested, the police enter upon the back porch and look inside a window. Seeing the grandson, they enter his grandparents' home without knocking and they arrest him. Under today's decision, the warrantless entry and the trespass to gather information will go unchallenged and undeterred.

requires the result the court reaches. *Payton, supra* at 574, was the Court's response to a State's statutes permitting police to make warrantless entry into a suspect's own home in order to arrest him. The Court determined that the Fourth Amendment required more: a magistrate's determination that probable cause existed, something that an arrest warrant provides. *Id.* at 602-603. "If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id.* In *Steagald, supra* at 214 n.7, decided a year later, the Court explained that "[b]ecause an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home." *Id.* at 214 n.7. There is no need, in other words, for a search warrant as well as an arrest warrant when entering the suspect's own home for the limited purpose of executing an arrest warrant for him.[6]

The situation is quite otherwise in a third party's home, and the Court in *Steagald* clarified that, under the Fourth Amendment, police may not, absent consent or exigent circumstances, legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant. *Id.* at 205-206. In *Steagald*, however, the householder was himself arrested, along with the subject of the arrest warrant, and was

---

[6] I have no doubt, however, that had the police first made a warrantless entry onto the suspect's private property — say, his back porch — to search for information as to whether he was at home, that search would fall outside the "limited authority" police have under *Payton* v. *New York*, 445 U.S. 573, 602-603 (1980) (*Payton*), to enter his home to effect his arrest under the auspices of an arrest warrant. See *Maryland* v. *Buie*, 494 U.S. 325, 330, 334-336 (1990) (arrest warrant provides police justification to search only areas "in the house that [the defendant] might have been found"); *Steagald* v. *United States*, 451 U.S. 204, 212-213 (1981) (*Steagald*) (arrest warrant primarily serves to protect individual from unreasonable seizure while search warrant safeguards individual's interest in privacy of his home against unjustified police intrusions).

thus able to challenge the absence of a search warrant. *Id*. at 206-207.

Because neither *Steagald* nor *Payton* involved a challenge by the subject of the arrest warrant executed in a third party's home absent a valid search warrant, neither answers the question now before us. The court answers it by adopting the view, one shared by a number of courts,[7] that the subject of an arrest warrant present in a third party's home does not have a right to insist that a valid search warrant be obtained before entry can be made. In doing so, the court in essence adopts the pithy observation of Justice Kass, writing for the Appeals Court in *Commonwealth* v. *Allen*, 28 Mass. App. Ct. 589, 593 (1990), that "[i]t would produce an unacceptable paradox to afford the subject of an arrest warrant greater protection in the home of another than in his or her own home." While this reasoning is not without some force, it ultimately does not yield a satisfactory answer to the question before us. It does not take into account further Fourth Amendment jurisprudence that should also frame the analysis, and it fails to give due weight to the third-party householder's right to protection from unreasonable searches of his home, an interest at the core of the Fourth Amendment.

Ten years after the *Payton* decision, the United States Supreme

---

[7]This view, however, is not without its critics. As the United States Court of Appeals for the First Circuit observed in *United States* v. *Weems*, 322 F.3d 18, 23 n.3 (1st Cir.), cert. denied, 540 U.S. 892 (2003):

"*Steagald* itself says that 'most modern commentators agree that a search warrant is necessary to fully protect the privacy interests of third parties when their home is searched for the subject of an arrest warrant.' [*Steagald, supra* at 208 n.3] (citing commentators). The leading treatise describes analyses that would not apply *Steagald* to the arrestee's claim as 'bizarre reasoning [which] would render the *Steagald* rule a virtual nullity.' 5 W.R. LaFave, Search and Seizure, § 11.3(b), at 143 (3d ed. 1996). 'If individuals are precluded from objecting to warrantless entries and searches of homes by their lack of standing, little incentive remains for law enforcement to comply with the warrant rules announced in *Payton* and *Steagald*.' J.D. Harbaugh & N.L. Faust, 'Knock on Any Door' — Home Arrests After *Payton* and *Steagald*, 86 Dick. L. Rev. 191 (1982)."

See *United States* v. *Underwood*, 717 F.2d 482, 486-492 (9th Cir. 1983) (Skopil, J., dissenting), cert. denied, 465 U.S. 1036 (1984).

Court held in *Minnesota* v. *Olson*, 495 U.S. 91, 99-100 (1990), that the warrantless arrest of an overnight guest in a third party's home violated the Fourth Amendment. The defendant's status as an overnight guest provided him a legitimate expectation of privacy in the third party's home like that enjoyed by the householder, enabling both to be free in that place from unreasonable searches and seizures. *Id.* at 98-99. The defendant accordingly had the right to insist upon a search warrant before the police could enter to arrest him. *Id.* at 100. In *Minnesota* v. *Carter*, 525 U.S. 83, 90-91 (1998), the Court continued to acknowledge that overnight guests in a home, and certain other social guests, may claim the protection of the Fourth Amendment. A majority of the Court concluded, on the facts presented, that the respondents, who were briefly in a third party's home during the day to bag cocaine together, did not share the householder's legitimate expectation of privacy and thus could not claim Fourth Amendment protection. *Id.*

As mentioned earlier, the facts here are consistent with the defendant's status as an overnight guest, even assuming that any legitimate expectation of privacy in the third party's home need be shown. But see *Commonwealth* v. *Mubdi*, 456 Mass. 385, 393 (2010). Rather than extend the reach of *Payton*, which should be confined to situations involving the execution of arrest warrants within the arrestee's own home, I would give full effect to the protections afforded third party householders in *Steagald.* I would allow a defendant who is a guest in a third party's home, and arrested while there pursuant to an arrest warrant, to challenge whether police had a valid warrant to search the home.

I reach this conclusion persuaded in good part by the reasoning of Justice Ginsburg, writing for the dissent in *Minnesota* v. *Carter*, 525 U.S. 83, 106 (1998). Justice Ginsburg observed that, by undermining the security of the respondents, the Court was also thereby undermining the security of the home resident herself. *Id.* Concluding that the "guest should share his host's shelter against unreasonable searches and seizures," the dissent "responds to the unique importance of the home — the most essential bastion of privacy recognized by the law." *Id.* Concerned that the Court's approach causes a homedweller to "place[] her

own privacy at risk . . . when she opens her home to others, uncertain whether the duration of their stay, their purpose, and their 'acceptance into the household' will earn protection" from unreasonable searches and seizures, *id.* at 107, the dissent would avoid this risk by "retain[ing] judicial surveillance over the warrantless searches today's decision allows." *Id.* at 112. I would do the same here, agreeing with Justice Ginsburg that, "[a]s I see it, people are not genuinely 'secure in their . . . houses . . . against unreasonable searches and seizures,' [Fourth Amendment to the United States Constitution], if their invitations to others increase the risk of unwarranted governmental peering and prying into their dwelling places." *Id.* at 108.