CHUTICH, Justice
(dissenting).
DISSENT
The majority extends the holding of Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371 (1980), to allow police officers to enter a presumptively innocent third-party’s home bearing only an arrest warrant for an overnight guest and a reason to believe that the guest is present in the host’s home. This unwarranted extension of Payton fails to apply later Fourth Amendment precedents and fails to protect the right of a host from unreasonable governmental intrusion into the sanctity of her home, a right at the “very core” of the Fourth Amendment. Silverman v. United States, 365 U.S. 505, 683, 81 S.Ct. 679 (1961). Because the principles articulated in Payton; Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642 (1981); and Minnesota v. Olson, 495 U.S. 91, 110 S.Ct. 1684 (1990), require that the Steagald search-warrant protection afforded to a host be extended to an overnight guest as well, even a guest subject to a valid arrest warrant, I respectfully dissent.
I acknowledge at the outset that the weight of federal authority holds otherwise.[1] And I further acknowledge that the “simple maxim” relied upon by the majority seems sensible at first blush: “A person has no greater right of privacy in another’s home than in his own.” But the majority’s maxim downplays several key principles of Fourth Amendment jurisprudence: the different judicial protections that flow from an arrest warrant and a search warrant and their centrality to the result in Pay-ton; Steagald’s concern with preventing— not just redressing—unlawful police intrusion into the privacy of a third party’s home; and Olson’s determination that an *124 overnight guest has a reasonable expectation of privacy in the host’s premises.
Black-letter law states that, in the absence of exigent circumstances or consent, police must acquire a search warrant to enter a home. Steagald, 451 U.S. at 212, 101 S.Ct. 1642; see also Johnson v. United States, 333 U.S. 10, 14-15, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Payton created a narrow exception to this general rule. It held that police may enter the home of a suspect without a search warrant if they have a warrant for the suspect’s arrest and reason to believe that the suspect is inside. 445 U.S. at 603, 100 S.Ct. 1371. The Court reasoned:
If there is sufficient evidence of a citizen’s participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.
Id. at 602-03, 100 S.Ct. 1371 (emphasis added). Notably, this analysis emphasizes that the exception applies when the suspect’s home is being searched. Although probable cause existed to arrest Payton, police could not enter his house to arrest him without an arrest warrant because “[t]he purpose of the decision was not to protect the person of the suspect but to protect his home from entry in the absence of a magistrate’s finding of probable cause.” Olson, 495 U.S. at 95, 110 S.Ct. 1684.
The holding in Payton makes sense because the first and most likely place to find the subject of an arrest warrant is in her home. See United States v. Underwood, 717 F.2d 482, 490 (9th Cir. 1983) (en banc) (Skopil, J., dissenting) (“An arrest warrant expressly or impliedly names one’s home as the place where one may be found.”). Stated another way, a judicial finding of probable cause to arrest the suspect implicitly serves as probable cause to enter the suspect’s home to search for her. See Steagald, 451 U.S. at 214 n.7, 101 S.Ct. 1642 (“Because an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person’s privacy interest when it is necessary to arrest him in his home.”). But, as Steagald held, “This analysis ... is plainly inapplicable when the police seek to use an arrest warrant as legal authority to enter the home of a third party to conduct a search.” Id.
The central holding of Steagald is that a search warrant is required to protect the privacy rights of a home’s resident, even if police have an arrest warrant for the resident’s guest. 451 U.S. at 216, 101 S.Ct. 1642. In Steagald, the homeowner was arrested, along with the guest who was the subject of the arrest warrant. The homeowner challenged the absence of the search warrant. Id. at 206-07, 101 S.Ct. 1642. The Court held that the arrest warrant did not protect the homeowner’s privacy interest, because although the officers believed that the subject of the arrest warrant was inside, this belief “was never subjected to the detached scrutiny of a judicial officer.” Id. at 213, 101 S.Ct. 1642.
The majority distinguishes Steagald, stating that deLottinville cannot vicariously assert the privacy rights of her host. See, e.g., Alderman v. United States, 394 U.S. 165, 174, 89 S.Ct. 961 (1969). But recitation of this rule oversimplifies the legal relationship between host and guest and minimizes the later holding of Olson, 495 U.S. at 91, 110 S.Ct. 1684.
In Olson, the Court held that the defendant’s status as an overnight guest provid *125 ed him with a reasonable expectation of privacy, and that exigent circumstances did not authorize unwarranted police entry into the home.[2] Id. at 98, 101, 110 S.Ct. 1684. The Court noted that a houseguest “is there with the permission of his host, who is willing to share his house and his privacy with his guest.” Id. at 99,110 S.Ct. 1684 (emphasis added). In Minnesota v. Carter, the Court held that two guests in the home of another did not have a reasonable expectation of privacy because they were there for mere hours, to package cocaine, a commercial enterprise.[3] 625 U.S. 83, 90-91, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). The Court emphasized the fleeting relationship between the guests and the host, as compared to the facts in Olson: “There is no suggestion that they had a previous relationship with [the resident] .... Nor was there anything similar to the overnight guest relationship in Olson to suggest a degree of acceptance into the household.” Id. at 90, 119 S.Ct. 469.
The Court’s reasoning in Olson and Carter shows that the guest’s reasonable expectation of privacy flows from the Fourth Amendment rights of the host. See Carter, 525 U.S. at 107, 119 S.Ct. 469 (Ginsburg, J., dissenting) (“The power to exclude implies the power to include.”). The benchmark for the privacy rights of a guest must be the privacy rights of the host. Professor LaFave’s analysis supports this interpretation: “[T]he analysis in Olson lends considerable support to the ... conclusion that the visitor can also object to the absence of a Steagald-reqnired search warrant.” 6 Wayne R. LaFave, Search & Seizure § 11.3(b) (5th ed. 2012) (footnotes omitted).
The host’s constitutional right to privacy is meaningless if it cannot prevent unwarranted intrusions into the home. The Fourth Amendment is “ ‘designed to prevent, not simply to redress, unlawful police action.’ ” Steagald, 451 U.S. at 215, 101 S.Ct. 1642 (quoting Chimel v. California, 395 U.S. 752, 765 n.12, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). Steagald’s search-warrant requirement becomes toothless if the resident is the only party entitled to assert its protection. To actually deter police from violating Steagald, the remedy must outweigh the tactical advantage of a violation. But as Judge Skopil explained in a dissent to the Ninth Circuit’s decision in Underwood,
[sjince police who enter a dwelling to effect an arrest presumably are searching for the subject, not for evidence that may incriminate others who may live there, they will have little, if any, incentive to- obtain a search warrant -if the suspect cannot-.challenge the entry. On the other hand, the owner of the home will not have occasion to. challenge an unlawful - entry except in the unusual case, where the police-come upon plain-view evidence that incriminates the owner.
717 F.2d at 491; accord Commonwealth v. Tatum, 466 Mass. 45, 992 N.E.2d 987, 996-97 (2013) (Lenk, J., dissenting).
*126 Although more zealous residents might bring section 1983 claims for unwarranted invasions of their privacy, civil cases are not likely to deter unreasonable searches and seizures.[4] As the Court explained in Steagald:
If suppression motions and damages actions were sufficient to implement the Fourth Amendment’s prohibition against unreasonable searches and seizures, there would be no need for the constitutional requirement that in the absence of exigent circumstances a warrant must be obtained for a home arrest or a search of a home for objects. We have instead concluded that in such cases the participation of a detached magistrate in the probable-cause determination is an essential element of a reasonable search or seizure.
451 U.S. at 215-16, 101 S.Ct. 1642. The majority’s decision will leave citizens largely unprotected when they exercise their right to shelter overnight guests.
The majority, to its credit, acknowledges that today’s decision creates a potential for abuse. This potential for abuse is not merely theoretical; in Steagald, the Court noted an extreme example in which police used two arrest warrants as authority to search 300 homes. 451 U.S. at 215, 101 S.Ct. 1642 (citing Lankford v. Gelston, 364 F.2d 197 (4th Cir. 1966)). Minnesotans would certainly be surprised to realize that the police can enter their homes at any time with nothing more than an arrest warrant for an overnight guest, or even a short-term social guest.[5] Yet this unreasonable intrusion is the practical result of expanding Payton to limit the rights of overnight guests.
For these reasons, I conclude that de-Lottinville was entitled to a finding by a neutral magistrate of probable cause to believe that she was inside the home. This requirement would protect the privacy interests of unwitting hosts in their homes, and it would not unduly burden law enforcement officials. As the Steagald court noted, the inconvenience of obtaining a search warrant “does not increase significantly when an outstanding arrest warrant already exists.” 451 U.S. at 222, 101 S.Ct. 1642. The time required to obtain a search warrant will not endanger public safety, especially in light of “technological developments that enable police officers to secure warrants more quickly.” Missouri v. McNeely, — U.S. -, 133 S.Ct. 1552, 1563, 185 L.Ed.2d 696 (2013); see also id. at -, n.4, 133 S.Ct. at 1562 n.4 (citing, inter alia, Minnesota rules enabling use of electronic communications in warrant pro *127 cedures). And law enforcement, in addition to the courts, would benefit from the certainty of a bright-line rule rather than the opaque “reason to believe” standard. Underwood, 717 F.2d at 491 (Skopil, J., dissenting) (“[T]he majority rule creates a difficult question for police in determining when to get a search warrant”).
In conclusion, I agree with Justice Ginsburg that “people are not genuinely ‘secure in their ... houses ... against unreasonable searches and seizures,’ U.S. Const. Arndt. 4, if their invitations to others increase the risk of unwarranted governmental peering and prying into their dwelling places,” Carter, 525 U.S. at 108, 119 S.Ct. 469 (Ginsburg, J., dissenting). The majority erects an unnatural wall between the privacy rights of a host and the privacy rights of an overnight guest, treating them as separate even though they are inextricably linked. Because I believe that the majority’s holding runs counter to the principles underlying Payton, Steagald, and Olson, I respectfully dissent.[6]

. As the dissent in Commonwealth v. Tatum notes: "This view ... is not without its critics.” 466 Mass. 45, 992 N.E.2d 987, 998 n.7 (2013) (Lenk, J., dissenting); see United States v. Weems, 322 F.3d 18, 23 n.3 (1st Cir. 2003); United States v. Underwood, 717 F.2d 482, 486 (9th Cir. 1983) (en banc) (Skopil, J., dissenting); State v. Schofield, 175 W.Va. 99, 331 S.E.2d 829, 841 (1985) (McGraw, J., dissenting).
In addition, key federal circuit cases on this issue were decided well before Minnesota v. Olson determined that overnight guests have an expectation of privacy in their host’s homes. See United States v. Buckner, 717 F.2d 297 (6th Cir. 1983); Underwood, 717 F.2d 482; United States v. Clifford, 664 F.2d 1090 (8th Cir. 1981). Later courts generally followed those earlier cases with little further analysis. See, e.g., United States v. Jackson, 576 F.3d 465, 468 (7th Cir. 2009) (citing Underwood, 717 F.2d at 483-84); United States v. Agnew, 407 F.3d 193, 197 (3d Cir. 2005) (same).

. The majority asserts that Olson merely established that an overnight guest has a reasonable expectation of privacy and does not consider the effect of an arrest warrant for the guest. Although the search in Olson was conducted without any warrant, this factual distinction does not authorize the court to ignore the essential finding that a host may share his reasonable expectation of privacy with a guest. See Olson, 495 U.S. at 99, 110 S.Ct. 1684.

. Still, five justices agreed in Carter that "as a general rule, social guests will have an expectation of privacy in their host's home.” Carter, 525 U.S. at 102, 119, S.Ct. 469 (Kennedy, J., concurring); see id. at 103, 119 S.Ct. 469 (Breyer, J., concurring); id. at 106-07, 119 S.Ct. 469 (Ginsburg, J., dissenting).

. See Thomas Y. Davies, The Supreme Court Giveth and the Supreme Court Taketh Away: The Century of Fourth Amendment "Search and Seizure” Doctrine, 100 J. Crim, L. & Criminology 933, 1030 (2010) (“The Burger Court majority effectively barred use of injunctions to enforce Fourth Amendment restraints. The Rehnquist Court majority also effectively barred enforcement through damage lawsuits brought against state or local officers under § 1983 or against federal officers under the parallel Bivens doctrine. In particular, Justice Scalia’s 1987 majority opinion in Anderson v. Creighton made it virtually impossible for a plaintiff to overcome the qualified immunity defense ... if issues involving flexible standards or fact-based issues such as probable cause or reasonableness were involved—as they typically are in search and seizure cases.” (footnotes omitted)).

. Consider, for example, grandparents who invite their college-aged grandson and several of his friends to stay for Thanksgiving. The grandparents and the grandson do not know that one of his friends has an outstanding arrest warrant, but a third person alerts the police that the suspect is present in the grandparents' home. Under the majority's holding, by authority of an arrest warrant only, the police may enter the grandparents’ home without knocking, even during Thanksgiving dinner.

. Because I conclude that the Fourth Amendment affords overnight guests the protection of a search warrant before police officers may enter the home of a third-party to arrest them, I do not address deLottinville’s alternative argument invoking the protections of Minnesota's Constitution.