[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13780
_____

D.C. Docket No. 3:12-cr-00017-WKW-WC-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHEDRICK D. HOLLIS,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(March 12, 2015)

Before WILLIAM PRYOR and JORDAN, Circuit Judges, and HAIKALA,* District Judge.

_____

* Honorable Madeline Hughes Haikala, United States District Judge for the Northern District of Alabama, sitting by designation.

WILLIAM PRYOR, Circuit Judge:

This appeal requires us to decide whether the subject of an arrest warrant may challenge the use of evidence found in plain view during a protective sweep in a third party's residence. Law enforcement officers possessed an arrest warrant for Shedrick Hollis and learned that he could be found in an apartment the officers suspected to be a drug house. After surrounding the apartment, the officers saw Hollis through a window, broke through the door, and arrested him, and other officers conducted a protective sweep of the apartment. During that sweep, the officers discovered marijuana and firearms in plain view. After he was indicted on charges of possession of a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1), felon in possession of a firearm, 18 U.S.C. § 924(c)(1)(A), and possession of a firearm in furtherance of a drug-trafficking crime, *id*. §§ 922(g)(1), 924(e), Hollis moved to suppress the drugs and firearms found in the apartment. The district court denied his motion. Hollis was convicted on all counts. Because the evidence was discovered in plain view during a protective sweep incident to a valid arrest, we affirm.

## I.  BACKGROUND

In February 2011, officers were searching for Hollis based on an outstanding Georgia arrest warrant for a parole violation. Police officers from Phenix City, Alabama, and agents of the United States Marshals Service received information

that Hollis might be found in an apartment in Phenix City alleged to be a drug house. On March 1, 2011, officers surrounded the apartment. Some of the officers approached the front door of the apartment and knocked. Hollis peered out from behind a window, and the officers recognized him. The officers yelled "police" and ordered Hollis to open the door. After waiting for a brief period, the officers used a battering ram to open the door and arrested Hollis.

Other officers entered the apartment to conduct a protective sweep of the area. They found a cosmetic bag with marijuana on a dresser, weapons under a bed, and marijuana on the kitchen counter. The officers then obtained a search warrant for the premises. In a thorough search of the apartment, they discovered about a pound of cocaine, large amounts of marijuana, crack cocaine, ecstasy, scales, and about $5,000 in cash. One of the scales had a latent fingerprint on it, later attributed to Hollis.

A federal grand jury indicted Hollis on two counts of possession of a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1), one count of possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A), and one count of felony possession of a firearm, *id.* §§ 922(g)(1), 924(e). Before trial, Hollis moved to suppress the evidence obtained from the apartment on the ground that the officers conducted an illegal, warrantless search in violation of his rights under the Fourth Amendment. A magistrate judge held an

3

evidentiary hearing and found that Hollis was not invited into the apartment by its owner, but by an acquaintance of the owner. Because Hollis was "a guest of an uninvited guest," the magistrate judge recommended that Hollis's motion to suppress be denied. The district court adopted the report and recommendation of the magistrate judge and denied Hollis's motion to suppress.

Before trial, the government moved to exclude the testimony of Hollis's fingerprint expert, Lawden Yates, Jr. The government requested a hearing to confirm Yates's qualifications under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993). The district court held a hearing and ruled that Yates could not testify "as to fingerprint comparison." But the district court reserved judgment on whether Yates could testify about whether the latent fingerprint was of sufficient quality to make a comparison. Yates later testified that there "shouldn't be any" difference between the expertise required to compare fingerprints and the expertise used to judge the sufficiency of a latent fingerprint for comparison. He also testified that when in doubt, a technician should send a print to the laboratory to see if an identification can be made. Because the district court had already ruled that Yates was not qualified to testify about fingerprint comparisons and the same expertise was required to judge the sufficiency of a latent print for comparison, the district court ruled that Yates could not testify about the sufficiency of the print taken from the scale.

4

The jury convicted Hollis on all counts. The district court sentenced Hollis to a term of imprisonment of 420 months, followed by eight years of supervised release.

## II. STANDARDS OF REVIEW

Two standards of review govern this appeal. When we review a motion to suppress, we review *de novo* the legal conclusions of the district court; we review for clear error its findings of fact; and we review the entire record in the light most favorable to the party prevailing below. *United States v. Newsome*, 475 F.3d 1221, 1223–24 (11th Cir. 2007). We review for abuse of discretion the decision of the district court to exclude expert testimony. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141–42, 118 S. Ct. 512, 517 (1997).

## III.  DISCUSSION

We divide our discussion in two parts. First, we explain that the drugs and firearms seized from the Phenix City apartment were admissible because they were found in plain view during a protective sweep incident to a valid arrest. Second, we explain that the district court did not abuse its discretion when it refused to allow Yates to testify as an expert about the sufficiency of the latent fingerprint for comparison.

*A. The Officers Were Entitled to Seize Evidence in Plain View During a Protective Sweep Incident to a Valid Arrest.*

Hollis argues that the district court erred when it admitted the evidence seized from the apartment because he had a reasonable expectation of privacy as a guest in the apartment. The government denies that Hollis had a reasonable expectation of privacy as a guest in the apartment and, alternatively, argues that the evidence was discovered in plain view during a protective sweep incident to a valid arrest. Because we agree with the alternative argument of the government, we need not address whether Hollis had a reasonable expectation of privacy as a guest in the apartment.

"[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives . . . when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603, 100 S. Ct. 1371, 1388 (1980). "Law enforcement officers are permitted, in the context of a valid arrest, to conduct a protective sweep of a residence for officers' safety." *United States v. Yeary*, 740 F.3d 569, 579 (11th Cir. 2014). Police can execute an arrest warrant by entering a residence if they have a "reasonable belief that the location to be searched is the suspect's dwelling, and that the suspect is within the residence at the time of entry." *United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir. 1995).

Although the police did not believe that the apartment was Hollis's dwelling, that fact is of no help to Hollis:

> A person has no greater right of privacy in another's home than in his own. If an arrest warrant and reason to believe the person named in the warrant is present are sufficient to protect that person's [F]ourth [A]mendment privacy rights in his own home, they necessarily suffice to protect his privacy rights in the home of another.

*United States v. Agnew*, 407 F.3d 193, 197 (3d Cir. 2005) (internal quotation marks and citation omitted). To be sure, when a police officer effectuates an arrest warrant in a third-party's abode, the officer may violate the Fourth Amendment rights of the third-party, *Steagald v. United States*, 451 U.S. 204, 212–16, 101 S. Ct. 1642, 1648–50 (1981). But we agree with our sister circuits that the subject of an arrest warrant cannot challenge the execution of that warrant and the later discovery of evidence in a third-party's home. *See, e.g.*, *United States v. Jackson*, 576 F.3d 465, 468 (7th Cir. 2009); *United States v. McCarson*, 527 F.3d 170, 172–73 (D.C. Cir. 2008); *Agnew*, 407 F.3d at 197; *United States v. Kaylor*, 877 F.2d 658, 663 (8th Cir. 1989); *United States v. Underwood*, 717 F.2d 482, 484 (9th Cir. 1983); *United States v. Buckner*, 717 F.2d 297, 299–300 (6th Cir. 1983); *but see United States v. Weems*, 322 F.3d 18, 23 n.3 (1st Cir. 2003) (assuming but not deciding that a suspect can challenge the search of a third-party's home incident to the suspect's arrest).

The protective sweep, performed incident to Hollis's arrest, was a valid attempt to ensure that the apartment did not contain "other persons who are dangerous and who could unexpectedly launch an attack." *United States v. Hromada*, 49 F.3d 685, 690 (11th Cir. 1995) (internal quotation marks and citation omitted). The government established that "there [were] articulable facts [that] . . . would warrant a reasonably prudent officer in believing that the area to be swept harbor[ed] an individual posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 334, 110 S. Ct. 1093, 1098 (1990); *see also Hromada*, 49 F.3d at 690 (holding that a protective sweep was valid where the "purpose of the protective sweep . . . was to secure [the home] and investigate the officers' reasonable suspicion" that others were in the home). The district court found that the officers suspected that the apartment was a "drug house" that could hold "other occupants." One of the officers testified that he had been told that the apartment was a "drug house," with a "high level of activity," where "people [were] in and out of the house all hours of the day or night," and that they "could expect to encounter a number of people inside." Based on that information, the officers could draw the "rational inference," *Buie*, 494 U.S. at 334, 110 S. Ct. at 1098, that there might be armed individuals inside the apartment.

Because the officers could conduct a protective sweep, the evidence they found in plain view was admissible. As the Supreme Court has explained, "if

8

contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point." *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S. Ct. 2130, 2137 (1993). As part of the sweep, the officers found marijuana in plain view on a dresser in the bedroom and on a counter in the kitchen, and they found loaded firearms under a bed. It "was only coincidental that [the officers] discovered contraband in plain view while conducting the [protective] sweep." *Yeary*, 740 F.3d at 580. The officers then obtained a search warrant for the apartment and found additional contraband. As a result, all of the evidence found during both searches was admissible.

### B. The District Court Did Not Abuse Its Discretion When It Refused to Admit Yates's Testimony.

Hollis also argues that the district court abused its discretion when it refused to allow Yates, a forensics expert, to testify about the sufficiency of a latent fingerprint for comparison, but we disagree. "[T]he task of evaluating the reliability of expert testimony is uniquely entrusted to the district court under *Daubert,* and . . . we give the district court considerable leeway in the execution of its duty." *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005) (internal quotation marks and citation omitted). The "rules relating to *Daubert* issues are not

precisely calibrated and must be applied in case-specific evidentiary circumstances that often defy generalization." *Id.* Hollis must establish that the district court "abdicat[ed]" its duty, or that it "applie[d] the wrong law, follow[ed] the wrong procedure, base[d] its decision on clearly erroneous facts, or commit[ted] a clear error in judgment." *Id.* "[U]nder the abuse of discretion standard of review there will be occasions in which we affirm the district court even though we would have gone the other way had it been our call." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (internal quotation marks and citation omitted). Hollis cannot satisfy this burden.

The district court applied the correct law, correctly ordered a *Daubert* hearing, and did not base its decision on clearly erroneous facts. *See Brown*, 415 F.3d at 1266. The district court ruled that Yates could not testify as an expert because he was not "qualified" as an expert in fingerprint comparison. *See* Fed. R. Evid. 702. The district court then ruled that Yates could not testify about the sufficiency of a latent fingerprint for comparison because Yates himself testified that the expertise required to determine sufficiency is identical to the expertise required to perform comparisons. Hollis does not challenge the ruling that Yates was unqualified to testify about fingerprint comparison, and Hollis fails to explain how Yates, if not qualified as an expert on comparison, could be qualified as an expert on sufficiency, when it was Yates who testified that there should be no

10

difference in the expertise required for each analysis. Accordingly, the district court was within its "considerable leeway," *Brown*, 415 F.3d at 1266 (internal quotation marks and citation omitted), when it concluded that Yates lacked the necessary expertise to testify about the sufficiency of a latent fingerprint for comparison.

## IV.  CONCLUSION

We **AFFIRM** Hollis's conviction.