STATE OF MINNESOTA

IN SUPREME COURT

A15-1481

Court of Appeals                                                    Lillehaug, J.
                                                          Dissenting, Chutich, J.

State of Minnesota,

                 Respondent,

vs.                                                       Filed:  February 15, 2017
                                                          Office of Appellate Courts
Leona Rose deLottinville,

                 Appellant.

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Brandi Schiefelbein, Meeker County Attorney, Samuel P. Weeks, Assistant Meeker County Attorney, Litchfield, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

Cort C. Holten, Jeffrey D. Bores, Gary K. Luloff, Chestnut Cambronne P.A., Minneapolis, Minnesota, for amicus curiae Minnesota Police and Peace Officers Association Legal Defense Fund.

_____

S Y L L A B U S

Neither the United States Constitution nor the Minnesota Constitution requires police to obtain a search warrant before entering a third party's home to execute a lawfully issued arrest warrant for a guest.

Affirmed.

1

LILLEHAUG, Justice.

This case presents the question of whether police, having obtained an arrest warrant, are required by the United States Constitution or the Minnesota Constitution to obtain a search warrant to enter a third party's home to arrest the subject of the arrest warrant. Because we conclude that a search warrant is not required, we affirm.

In 2015, appellant Leona Rose deLottinville was arrested and charged by complaint with two felonies: fifth-degree possession of methamphetamine and storing methamphetamine paraphernalia in the presence of a child. In ordering deLottinville's pretrial release, the district court imposed conditions that she not possess or consume alcoholic beverages or any mood-altering drugs, and that she be subject to random testing. DeLottinville acknowledged that a violation of the conditions of release could result in her arrest. When she failed several random tests, the State applied for an arrest warrant. The district court found probable cause that deLottinville had violated the conditions of her release and issued a warrant for her arrest. DeLottinville does not challenge the lawfulness of the arrest warrant.

Five days later, responding to a tip, officers went to the residence of deLottinville's boyfriend, D.R., in Grove City. D.R. lived in an apartment in the lower level of his parents' house. Upon arriving, one officer spoke with D.R.'s mother at the front door while the other officer walked around to the back door to prevent anyone from fleeing. At the back of the house, the officer looked through a glass patio door and saw deLottinville. He opened the unlocked door, went inside, and arrested her.

While arresting deLottinville, the officer saw marijuana and a bong on a countertop. There is no dispute that the items were in plain view. Later that day, law enforcement obtained a search warrant for D.R.'s apartment and discovered marijuana, methamphetamine, hydrocodone pills, and drug paraphernalia. The State charged deLottinville with two counts of fifth-degree possession of a controlled substance, Minn. Stat. § 152.025, subd. 2(a)(1) (2016); and possession of drug paraphernalia, Minn. Stat. § 152.092 (2016).

On a motion to suppress, the district court ruled that deLottinville's arrest was illegal because the warrant for her arrest did not authorize police to enter D.R.'s apartment. The district court suppressed all fruits of the arrest and dismissed the charges. The court of appeals unanimously reversed, adopting the reasoning of the United States Court of Appeals for the Eighth Circuit in *United States v. Clifford*, which held that a guest in a home does not have a greater expectation of privacy than the homeowner under the Fourth Amendment. *State v. deLottinville*, 877 N.W.2d 199, 204-05 (Minn. App. 2016) (citing 664 F.2d 1090, 1092-93 (8th Cir. 1981)). We granted review to decide whether either the United States Constitution or the Minnesota Constitution requires that the evidence be suppressed.

## I.

When reviewing a pretrial order on a motion to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and its legal determinations de novo. *See State v. Lugo*, 887 N.W.2d 476, 483-85 (Minn. 2016).

3

The Fourth Amendment to the United States Constitution states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Fourth Amendment rights are "personal" and "may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). As relevant here, standing to bring a Fourth Amendment claim hinges on whether deLottinville has "a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). The parties agree that an overnight guest such as deLottinville has a legitimate expectation of privacy in her host's home. *See Minnesota v. Olson*, 495 U.S. 91, 98 (1990).

The Supreme Court has not directly addressed the issue in this case, but two of its decisions set the boundaries of the legal analysis. In *Payton v. New York*, 445 U.S. 573 (1980), the Court announced that police may enter into the "dwelling in which the suspect lives" to execute an arrest warrant. *Id.* at 603. The Court reasoned, "If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law," even though "an arrest warrant requirement may afford less protection than a search warrant requirement." *Id.* at 602-03. The Court explicitly reserved the question of whether the same holds true when the subject of an arrest warrant is believed to be present in *another person's* home. *Id.* at 583.

The question *Payton* left open was explored, but not answered, in *Steagald v. United States*, 451 U.S. 204 (1981). In *Steagald*, armed with an arrest warrant, police entered a third party's home to arrest a guest. *Id.* at 206. While police searched for the guest inside

4

the home, they found evidence incriminating the homeowner. *Id.* at 206-07. The Court held that, with regard to the *homeowner's* Fourth Amendment rights, the arrest warrant for the guest did not justify entry into and search of the home. *Id.* at 216. The crux of the Court's reasoning was that, unlike a search warrant, an arrest warrant does not contain "a showing of probable cause to believe that the legitimate object of a search is located in a particular place." *Id.* at 213. Thus, the homeowner's "only protection from an illegal entry and search was the agent's personal determination of probable cause." *Id.* But the Court again confined its holding, limiting it to a challenge raised by "a person not named in the warrant." *Id.* at 212.

In a nutshell, *Payton* describes the Fourth Amendment rights of a homeowner subject to an arrest warrant, while *Steagald* explains the rights of a homeowner when police execute an arrest warrant for a guest. But the Supreme Court has not yet defined the Fourth Amendment rights of those in deLottinville's position: guests subject to an arrest warrant.

We conclude that *Payton* sets the ceiling on a guest's Fourth Amendment rights. A guest should not receive any greater Fourth Amendment protection when outside her home than when inside it. The home is "first among equals" under the Fourth Amendment, representing the "very core" of a person's constitutional protections. *Florida v. Jardines*, ___ U.S. ___, ___, 133 S. Ct. 1409, 1414 (2013) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961) (internal quotation marks omitted)). Yet *Payton* held that it is constitutionally reasonable for police to enter a person's own home when police have an arrest warrant for that person. *Payton*, 445 U.S. at 602. Because Fourth Amendment rights

5

are at their apex in one's own home, it necessarily follows that the subject of an arrest warrant enjoys no greater protection as a guest in another's home.

In other words, it is a person's status as the subject of the arrest warrant, not whether the person is in her own home or the home of another, that is decisive under *Payton*'s logic. Here, police lawfully obtained an arrest warrant for deLottinville and entered the home knowing that she was there, so their entry did not violate her Fourth Amendment rights.

Federal circuit courts almost universally agree. Of the ten circuit courts that have addressed this issue, nine have held that a guest's Fourth Amendment rights are not violated by police entry into another's home to arrest a guest under a lawful arrest warrant. *See Clifford*, 664 F.2d at 1093; *see also United States v. Bohannon*, 824 F.3d 242, 250-52 (2d Cir. 2016); *United States v. Hollis*, 780 F.3d 1064, 1068-69 (11th Cir.), *cert. denied*, 136 S. Ct. 274 (2015); *United States v. Jackson*, 576 F.3d 465, 468 (7th Cir. 2009); *United States v. Kern*, 336 F. App'x 296, 298 (4th Cir. 2009) (unpublished); *United States v. McCarson*, 527 F.3d 170, 172-73 (D.C. Cir. 2008); *United States v. Pruitt*, 458 F.3d 477, 482 (6th Cir. 2006); *United States v. Agnew*, 407 F.3d 193, 197 (3d Cir. 2005); *United States v. Underwood*, 717 F.2d 482, 484 (9th Cir. 1983). These decisions repeat a simple maxim: "A person has no greater right of privacy in another's home than in his own." *Underwood*, 717 F.2d at 484. Only the First Circuit has disagreed, and then only provisionally, assuming without deciding that a suspect can challenge the search of another's home during an arrest. *United States v. Weems*, 322 F.3d 18, 23 n.3 (1st Cir. 2003).

The few state supreme courts that have addressed the issue are in accord with the heavy weight of federal authority. The Massachusetts Supreme Judicial Court allowed

6

entry without a search warrant to arrest a guest under both the Fourth Amendment and Article 14 of the Massachusetts Declaration of Rights, echoing federal circuit courts in stating that "[i]t would produce an unacceptable paradox to afford the subject of an arrest warrant greater protection in the home of another than in his or her own home." *Commonwealth v. Tatum*, 992 N.E.2d 987, 992-93 (Mass. 2013) (citation and internal quotation marks omitted). Supreme courts in Pennsylvania and Rhode Island came to the same conclusion under the Fourth Amendment. *Commonwealth v. Stanley*, 446 A.2d 583, 586-87 (Pa. 1982); *State v. O'Dell*, 576 A.2d 425, 427 (R.I. 1990). We are aware of no state supreme court decision to the contrary.

In deciding that a search warrant is not required to enter a third party's home, we have not overlooked the argument that such a decision does not fully protect the privacy rights of the homeowner. We understand that a homeowner might well be surprised and distressed to learn that police may enter at any time to arrest a guest. *See Steagald*, 451 U.S. at 213 (reasoning that an arrest warrant "did absolutely nothing to protect petitioner's privacy interest in being free from an unreasonable invasion and search of his home"). Nor do we discount *Steagald*'s warning of a "potential for abuse": police using arrest warrants as a pretext to enter homes when they lack probable cause of illegal activity. *Id.* at 215.

But there is no indication in this case of any such abuse; deLottinville was visible to the officer before he entered the home. And the question of what rights the homeowner may have in such a situation is not before us. *See Hollis*, 780 F.3d at 1068; *United States v. Buckner*, 717 F.2d 297, 300 (6th Cir. 1983) (suggesting a third-party homeowner may pursue a civil rights claim). This case concerns only a *guest's* constitutional rights, and a

7

guest in a home cannot "vicariously assert[]" the rights of the homeowner. *Alderman*, 394 U.S. at 174. Here, law enforcement's entry and search resulted in charges against only the guest, not the homeowner.

DeLottinville argues that the Supreme Court's decision in *Olson*, 495 U.S. at 100, compels police to obtain both an arrest warrant and a search warrant in these circumstances. We disagree. In *Olson*, the defendant sought to suppress a statement he made following law enforcement's *warrantless* entry into another's home to arrest him. *Id.* at 94. The Court held that, as an overnight guest, Olson had a legitimate expectation of privacy in the home. *Id.* at 98-99. Because law enforcement entered the home without *any* warrant, the entry violated Olson's Fourth Amendment rights. *Id.* at 93-94.

Unlike in *Olson*, deLottinville was the subject of an arrest warrant. *Olson* merely confirms that deLottinville had an expectation of privacy; it says nothing about the effect of a lawful arrest warrant. Therefore, we conclude that law enforcement's entry into another's home to arrest deLottinville did not violate her Fourth Amendment rights.

## II.

DeLottinville contends that even if the Fourth Amendment does not require suppression, Article I, Section 10 of the Minnesota Constitution does. We disagree.

The text of Article I, Section 10 of the Minnesota Constitution mirrors the Fourth Amendment.[1] We are "free to interpret the Minnesota Constitution as affording greater protection against unreasonable searches and seizures than the United States Constitution."

---

[1] We have described the language of Article I, Section 10 and the Fourth Amendment as "textually identical" despite some differences in punctuation between the two provisions. *State v. McMurray*, 860 N.W.2d 686, 689 n.1 (Minn. 2015) (citation omitted).

8

*State v. Askerooth*, 681 N.W.2d 353, 361 (Minn. 2004). "[W]hen we reach a clear and strong conviction that there is a principled basis for greater protection of the individual civil and political rights of our citizens under the Minnesota Constitution, we will not hesitate to interpret the constitution to independently safeguard those rights." *Kahn v. Griffin*, 701 N.W.2d 815, 828 (Minn. 2005).

When we interpret Article I, Section 10, we consider the Supreme Court's Fourth Amendment jurisprudence to be "of persuasive, although not compelling, authority." *In re Welfare of B.R.K.*, 658 N.W.2d 565, 577 (Minn. 2003) (citing *State v. Harris*, 590 N.W.2d 90, 97 (Minn. 1999)). We have given independent meaning to Article I, Section 10 when we have had a principled reason to do so.[2]

On the subject of whether both an arrest warrant *and* a search warrant are required to enter a third party's home to arrest a guest, we see no principled basis to apply the Minnesota Constitution to depart from overwhelming federal precedent and unanimous,

---

[2] *See, e.g.*, *State v. Davis*, 732 N.W.2d 173, 181-82 (Minn. 2007) (holding, in the absence of Supreme Court precedent, that a dog sniff in a hallway outside an apartment constitutes a search requiring a reasonable, articulable suspicion of criminal activity); *State v. Carter*, 697 N.W.2d 199, 212 (Minn. 2005) (holding that a dog sniff of an area outside a storage unit was an unreasonable search under Article I, Section 10, despite being reasonable under the Fourth Amendment, when officers lacked a reasonable, articulable suspicion of criminal activity); *Askerooth*, 681 N.W.2d at 362-63 (holding, contrary to *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), that a search or seizure during a traffic stop must be reasonable under Article I, Section 10 even when a minor law has been violated); *B.R.K.*, 658 N.W.2d at 576-77 (holding, in the absence of Supreme Court precedent, that short-term social guests have a reasonable expectation of privacy under Article I, Section 10); *Ascher v. Comm'r of Public Safety*, 519 N.W.2d 183, 187 (Minn. 1994) (holding, contrary to *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444 (1990), that roadblocks that indiscriminately stop all drivers in an effort to apprehend drunk drivers violate Article I, Section 10); *In re Welfare of E.D.J.*, 502 N.W.2d 779, 782-83 (Minn. 1993) (holding, contrary to *California v. Hodari D.*, 499 U.S. 621 (1991), that a person is seized under Article I, Section 10 when he reasonably concludes he is not free to leave).

although limited, state supreme court precedent. There is nothing in our constitution's text or history, or in our state's case law[3] or tradition, that requires that both types of warrants be issued to arrest a guest present in another's home. We decline to adopt a rule that provides greater protection for a guest than a homeowner in the execution of a lawful arrest warrant. DeLottinville is correct that, in *B.R.K.*, invoking both constitutions, we suppressed the fruits of an entry and search involving a short-term social guest. 658 N.W.2d at 580. But in that case, law enforcement had neither a search warrant nor an arrest warrant, and B.R.K. was found hiding in the home. *Id.* at 569. In this case, the police had an arrest warrant and entered the home only after seeing the subject of the warrant.

Accordingly, we hold that neither the Fourth Amendment nor Article I, Section 10 requires police to obtain a search warrant before entering a home to arrest a guest who is the subject of a lawfully issued arrest warrant.

Affirmed.

---

[3] In two cases decided shortly after *Steagald*, we made conflicting statements—in dicta—about the issue presented in this case. *Compare State v. Miller*, 316 N.W.2d 23, 28 (Minn. 1982) (suggesting that an arrest warrant for an overnight guest is sufficient to enter a third party's home), *with State v. Patricelli*, 324 N.W.2d 351, 354 n.2 (Minn. 1982) (suggesting that a search warrant is necessary to enter a third party's home to execute an arrest warrant for a visitor).

10

DISSENT

CHUTICH, Justice (dissenting).

The majority extends the holding of *Payton v. New York*, 445 U.S. 573 (1980), to allow police officers to enter a presumptively innocent third-party's home bearing only an arrest warrant for an overnight guest and a reason to believe that the guest is present in the host's home. This unwarranted extension of *Payton* fails to apply later Fourth Amendment precedents and fails to protect the right of a host from unreasonable governmental intrusion into the sanctity of her home, a right at the "very core" of the Fourth Amendment. *Silverman v. United States*, 365 U.S. 505, 683 (1961). Because the principles articulated in *Payton*; *Steagald v. United States*, 451 U.S. 204 (1981); and *Minnesota v. Olson*, 495 U.S. 91 (1990), require that the *Steagald* search-warrant protection afforded to a host be extended to an overnight guest as well, even a guest subject to a valid arrest warrant, I respectfully dissent.

I acknowledge at the outset that the weight of federal authority holds otherwise.[1] And I further acknowledge that the "simple maxim" relied upon by the majority seems

---

[1] As the dissent in *Commonwealth v. Tatum* notes: "This view . . . is not without its critics." 992 N.E.2d 987, 998 n.7 (Mass. 2013) (Lenk, J., dissenting); *see United States v. Weems*, 322 F.3d 18, 23 n.3 (1st Cir. 2003); *United States v. Underwood*, 717 F.2d 482, 486 (9th Cir. 1983) (en banc) (Skopil, J., dissenting); *State v. Schofield*, 331 S.E.2d 829, 841 (W.V. 1985) (McGraw, J., dissenting).

In addition, key federal circuit cases on this issue were decided well before *Minnesota v. Olson* determined that overnight guests have an expectation of privacy in their host's homes. *See United States v. Buckner*, 717 F.2d 297 (6th Cir. 1983); *Underwood*, 717 F.2d 482; *United States v. Clifford*, 664 F.2d 1090 (8th Cir. 1981). Later courts generally followed those earlier cases with little further analysis. *See, e.g., United States v. Jackson*, 576 F.3d 465, 468 (7th Cir. 2009) (citing *Underwood*, 717 F.2d at 483-84); *United States v. Agnew*, 407 F.3d 193, 197 (3d Cir. 2005) (same).

D-1

sensible at first blush: "A person has no greater right of privacy in another's home than in his own." But the majority's maxim downplays several key principles of Fourth Amendment jurisprudence: the different judicial protections that flow from an arrest warrant and a search warrant and their centrality to the result in *Payton*; *Steagald's* concern with preventing—not just redressing—unlawful police intrusion into the privacy of a third party's home; and *Olson*'s determination that an overnight guest has a reasonable expectation of privacy in the host's premises.

Black-letter law states that, in the absence of exigent circumstances or consent, police must acquire a search warrant to enter a home. *Steagald*, 451 U.S. at 212; *see also Johnson v. United States*, 333 U.S. 10, 14-15 (1948). *Payton* created a narrow exception to this general rule. It held that police may enter the home of a suspect without a search warrant if they have a warrant for the suspect's arrest and reason to believe that the suspect is inside. 445 U.S. at 603. The Court reasoned:

> If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open *his doors* to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling *in which the suspect lives* when there is reason to believe the suspect is within.

*Id.* at 602-03 (emphasis added). Notably, this analysis emphasizes that the exception applies when the *suspect's* home is being searched. Although probable cause existed to arrest Payton, police could not enter his house to arrest him without an arrest warrant because "[t]he purpose of the decision was not to protect the person of the suspect but to protect his home from entry in the absence of a magistrate's finding of probable cause." *Olson*, 495 U.S. at 95.

The holding in *Payton* makes sense because the first and most likely place to find the subject of an arrest warrant is in her home. *See United States v. Underwood*, 717 F.2d 482, 490 (9th Cir. 1983) (en banc) (Skopil, J., dissenting) ("An arrest warrant expressly or impliedly names one's home as the place where one may be found."). Stated another way, a judicial finding of probable cause to arrest the suspect implicitly serves as probable cause to enter the suspect's home to search for her. *See Steagald*, 451 U.S. at 214 n.7 ("Because an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home."). But, as *Steagald* held, "This analysis . . . is plainly inapplicable when the police seek to use an arrest warrant as legal authority to enter the home of a third party to conduct a search." *Id.*

The central holding of *Steagald* is that a search warrant is required to protect the privacy rights of a home's resident, even if police have an arrest warrant for the resident's guest. 451 U.S. at 216. In *Steagald*, the homeowner was arrested, along with the guest who was the subject of the arrest warrant. The homeowner challenged the absence of the search warrant. *Id.* at 206-07. The Court held that the arrest warrant did not protect the homeowner's privacy interest, because although the officers believed that the subject of the arrest warrant was inside, this belief "was never subjected to the detached scrutiny of a judicial officer." *Id.* at 213.

The majority distinguishes *Steagald*, stating that deLottinville cannot vicariously assert the privacy rights of her host. *See, e.g.*, *Alderman v. United States*, 394 U.S. 165,

D-3

174 (1969). But recitation of this rule oversimplifies the legal relationship between host and guest and minimizes the later holding of *Olson*, 495 U.S. at 91.

In *Olson*, the Court held that the defendant's status as an overnight guest provided him with a reasonable expectation of privacy, and that exigent circumstances did not authorize unwarranted police entry into the home.[2] *Id.* at 98, 101. The Court noted that a houseguest "is there with the permission of his host, who is willing to share his house *and his privacy* with his guest." *Id.* at 99 (emphasis added). In *Minnesota v. Carter*, the Court held that two guests in the home of another did not have a reasonable expectation of privacy because they were there for mere hours, to package cocaine, a commercial enterprise.[3] 525 U.S. 83, 90-91 (1998). The Court emphasized the fleeting relationship between the guests and the host, as compared to the facts in *Olson*: "There is no suggestion that they had a previous relationship with [the resident] . . . . Nor was there anything similar to the overnight guest relationship in *Olson* to suggest a degree of acceptance into the household." *Id.* at 90.

The Court's reasoning in *Olson* and *Carter* shows that the guest's reasonable expectation of privacy flows from the Fourth Amendment rights of the host. *See Carter*, 525 U.S. at 107 (Ginsburg, J., dissenting) ("The power to exclude implies the power to

---

[2]    The majority asserts that *Olson* merely established that an overnight guest has a reasonable expectation of privacy and does not consider the effect of an arrest warrant for the guest. Although the search in *Olson* was conducted without *any* warrant, this factual distinction does not authorize the court to ignore the essential finding that a host may share his reasonable expectation of privacy with a guest. *See Olson*, 495 U.S. at 99.

[3]    Still, five justices agreed in *Carter* that "as a general rule, social guests will have an expectation of privacy in their host's home." *Carter*, 525 U.S. at 102 (Kennedy, J., concurring); *see id.* at 103 (Breyer, J., concurring); *id.* at 106-07 (Ginsburg, J., dissenting).

include.").  The benchmark for the privacy rights of a guest must be the privacy rights of the host.  Professor LaFave's analysis supports this interpretation: "[T]he analysis in *Olson* lends considerable support to the . . . conclusion that the visitor can also object to the absence of a *Steagald*-required search warrant."  6 Wayne R. LaFave, *Search & Seizure* § 11.3(b) (5th ed. 2012) (footnotes omitted).

The host's constitutional right to privacy is meaningless if it cannot prevent unwarranted intrusions into the home.  The Fourth Amendment is " 'designed to prevent, not simply to redress, unlawful police action.' "  *Steagald*, 451 U.S. at 215 (quoting *Chimel v. California*, 395 U.S. 752, 765 n.12 (1969)).  *Steagald*'s search-warrant requirement becomes toothless if the resident is the only party entitled to assert its protection.  To actually deter police from violating *Steagald*, the remedy must outweigh the tactical advantage of a violation.  But as Judge Skopil explained in a dissent to the Ninth Circuit's decision in *Underwood*,

> [s]ince police who enter a dwelling to effect an arrest presumably are searching for the subject, not for evidence that may incriminate others who may live there, they will have little, if any, incentive to obtain a search warrant if the suspect cannot challenge the entry. On the other hand, the owner of the home will not have occasion to challenge an unlawful entry except in the unusual case where the police come upon plain-view evidence that incriminates the owner.

717 F.2d at 491; *accord Commonwealth v. Tatum*, 992 N.E.2d 987, 996-97 (Mass. 2013) (Lenk, J., dissenting).

D-5

Although more zealous residents might bring section 1983 claims for unwarranted invasions of their privacy, civil cases are not likely to deter unreasonable searches and seizures.[4]  As the Court explained in *Steagald*:

> If suppression motions and damages actions were sufficient to implement the Fourth Amendment's prohibition against unreasonable searches and seizures, there would be no need for the constitutional requirement that in the absence of exigent circumstances a warrant must be obtained for a home arrest or a search of a home for objects.  We have instead concluded that in such cases the participation of a detached magistrate in the probable-cause determination is an essential element of a reasonable search or seizure.

451 U.S. at 215-16.  The majority's decision will leave citizens largely unprotected when they exercise their right to shelter overnight guests.

The majority, to its credit, acknowledges that today's decision creates a potential for abuse.  This potential for abuse is not merely theoretical; in *Steagald*, the Court noted an extreme example in which police used two arrest warrants as authority to search 300 homes.  451 U.S. at 215 (citing *Lankford v. Gelston*, 364 F.2d 197 (4th Cir. 1966)).  Minnesotans would certainly be surprised to realize that the police can enter their homes at any time with nothing more than an arrest warrant for an overnight guest, or even a short-

---

[4]     *See* Thomas Y. Davies, *The Supreme Court Giveth and the Supreme Court Taketh Away: The Century of Fourth Amendment "Search and Seizure" Doctrine*, 100 J. Crim. L. & Criminology 933, 1030 (2010) ("The Burger Court majority effectively barred use of injunctions to enforce Fourth Amendment restraints.  The Rehnquist Court majority also effectively barred enforcement through damage lawsuits brought against state or local officers under § 1983 or against federal officers under the parallel *Bivens* doctrine.  In particular, Justice Scalia's 1987 majority opinion in *Anderson v. Creighton* made it virtually impossible for a plaintiff to overcome the qualified immunity defense . . . if issues involving flexible standards or fact-based issues such as probable cause or reasonableness were involved—as they typically are in search and seizure cases." (footnotes omitted)).

term social guest.[5]  Yet this unreasonable intrusion is the practical result of expanding *Payton* to limit the rights of overnight guests.

For these reasons, I conclude that deLottinville was entitled to a finding by a neutral magistrate of probable cause to believe that she was inside the home.  This requirement would protect the privacy interests of unwitting hosts in their homes, and it would not unduly burden law enforcement officials.  As the *Steagald* court noted, the inconvenience of obtaining a search warrant "does not increase significantly when an outstanding arrest warrant already exists."  451 U.S. at 222.  The time required to obtain a search warrant will not endanger public safety, especially in light of "technological developments that enable police officers to secure warrants more quickly."  *Missouri v. McNeely*, ___ U.S. ___, ___, 133 S. Ct. 1552, 1563 (2013); *see also id.* at ___, n.4, 133 S.Ct. at 1562 n.4 (citing, *inter alia*, Minnesota rules enabling use of electronic communications in warrant procedures).  And law enforcement, in addition to the courts, would benefit from the certainty of a bright-line rule rather than the opaque "reason to believe" standard.  *Underwood*, 717 F.2d at 491 (Skopil, J., dissenting) ("[T]he majority rule creates a difficult question for police in determining when to get a search warrant.").

In conclusion, I agree with Justice Ginsburg that "people are not genuinely 'secure in their . . . houses . . . against unreasonable searches and seizures,' U.S. Const. Amdt. 4,

---

[5]  Consider, for example, grandparents who invite their college-aged grandson and several of his friends to stay for Thanksgiving.  The grandparents and the grandson do not know that one of his friends has an outstanding arrest warrant, but a third person alerts the police that the suspect is present in the grandparents' home.  Under the majority's holding, by authority of an arrest warrant only, the police may enter the grandparents' home without knocking, even during Thanksgiving dinner.

if their invitations to others increase the risk of unwarranted governmental peering and prying into their dwelling places," *Carter*, 525 U.S. at 108 (Ginsburg, J., dissenting). The majority erects an unnatural wall between the privacy rights of a host and the privacy rights of an overnight guest, treating them as separate even though they are inextricably linked. Because I believe that the majority's holding runs counter to the principles underlying *Payton*, *Steagald*, and *Olson*, I respectfully dissent.[6]

---

[6]      Because I conclude that the Fourth Amendment affords overnight guests the protection of a search warrant before police officers may enter the home of a third-party to arrest them, I do not address deLottinville's alternative argument invoking the protections of Minnesota's Constitution.